[No. C062816. Third Dist. Oct. 13, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
THANG YANG, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts I., II. and III. of the Discussion.

## Counsel

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Tia M. Coronado, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BUTZ, J.**—A jury acquitted defendant Thang Yang of murder, attempted murder, and shooting at an occupied car (Pen. Code, §§ 187, 664, 246),[1] but convicted him of voluntary manslaughter and participating in a criminal street gang (§§ 192, subd. (a) [count I], 186.22, subd. (a) [count IV]). The jury also sustained the following firearm enhancement on the voluntary manslaughter conviction: a coprincipal personally and intentionally discharged a firearm, causing death, in an offense that was gang committed. (§ 12022.53, subds. (d) & (e)(1) (hereafter section 12022.53(d) and (e)(1)).)

---

[1] Undesignated statutory references are to the Penal Code.

In the unpublished portion of this opinion (pts. I., II., III., *post*), we disagree with defendant that the evidence is insufficient regarding his aiding and abetting of the voluntary manslaughter and a gang enhancement (§ 186.22, subd. (b)(1)(C)), and that the trial court erred in instructing on aiding and abetting and in failing to bifurcate gang allegations.

In the published portion (pt. IV., *post*), we agree with defendant that the enhancement for firearm discharge by a coprincipal that caused death in a gang-committed felony (§ 12022.53(d) & (e)(1)—25 years to life) does not apply to him, because defendant was not convicted of one of the qualifying offenses enumerated in that statute. Consequently, we shall modify the judgment by striking this 25-year-to-life enhancement and imposing on defendant the previously stayed 10-year enhancement for a gang-committed violent felony. (§§ 186.22, subd. (b)(1)(C), 667.5, subd. (c)(1).) In all other respects, we shall affirm the judgment.

## FACTUAL BACKGROUND

*The Shooting*

On the afternoon of May 8, 2008, in Linda, California, Ignacio Castro was in the front passenger seat of a car driven by his older brother, Raymond Castro, when the two of them noticed defendant's car stopped behind them at a traffic light. Earlier in the day, Raymond had seen defendant's car drive by where Raymond worked.[2] Ignacio, who was 17 years old, had known defendant, who was nearly 17, since kindergarten.[3] As we shall explain later, there was tension between defendant and the Castro brothers.

When the traffic light changed, Raymond turned right and defendant went straight ahead. Raymond handed Ignacio a heavy flashlight to protect himself in case of trouble.

Shortly thereafter, when Raymond and Ignacio saw defendant's car driving on Oakwood Drive, Raymond sped up, ran a stop sign, and turned onto Oakwood, getting about two car lengths behind defendant.

Ignacio testified that, as he and Raymond followed defendant, Meng Thao (Thao) leaned out of the passenger's side window of defendant's car, pointed a gun at the Castros, and fired.[4] Raymond pushed Ignacio down and started to

---

[2] For ease of reference, some witnesses will be referred to by their first names rather than last. No disrespect is intended.

[3] Defendant was tried as an adult.

[4] With three separate juries, defendant was tried along with Thao and a third person in defendant's car, Pheng Kue (Kue).

make a U-turn. Ignacio heard more gunfire and then noticed Raymond had been shot. Raymond's car coasted to the curb, and stopped; Raymond had been felled by a bullet to the head.

Ignacio, along with another witness, as well as defendant himself, placed defendant, Thao and Kue in defendant's car at the time of the shooting.

An eyewitness to the shooting, who lived on Oakwood Drive, saw defendant's car drive slowly at an angle over the first speed bump (which most cars that height do, to avoid scraping); drive slowly between the two speed bumps (which was odd, because most cars speed up between the two speed bumps); and then increase its speed over the second bump and turn abruptly at the first intersecting street. This witness, as well as the police, also searched Raymond's car for weapons and ammunition just after the shooting, finding none; nor did Ignacio have anything in his hands.

Defendant's car was located after the shooting in an area claimed by defendant's gang, beneath a car cover with its engine still warm. The rear window of the car was shattered. Shattered glass had been found at the shooting site. A criminalist determined that a bullet traveled from the front to the back of the car, entered the edge of the rear window frame, and shattered the rear window.

Forensic evidence and a police interview statement from defendant linked the nine-millimeter handgun used in the shooting to Thao as well as to defendant's car (at the time of the shooting).

*Gang Evidence and History Between Defendant and the Castros*

There was extensive evidence that defendant, Thao and Kue were members of an active criminal street gang, the Hmong Nation Society (HNS). This evidence came from defendant's admissions, from tattoos, from police searches and contacts, from gang expert testimony, and from altercations involving defendant and Thao acting together.

The HNS gang expert testified that respect and intimidation are paramount in gang culture and that if a gang member feels disrespected, some type of retaliatory violence will usually follow. Defendant essentially echoed this testimony in a police interview, and also agreed that an HNS driveby shooting would build HNS's reputation.

Defendant and Ignacio had been fighting and having problems with one another since the eighth grade.

In March of 2008, defendant and others were at a Wal-Mart when they became embroiled in a fight with Ignacio and Raymond and another Castro brother. Raymond hit defendant in the head and threatened to kill those in defendant's group. Defendant was afraid because, according to him, Raymond, whose street name was Demon, had recently been paroled from prison.[5] Also according to defendant, after the Wal-Mart incident, Raymond drove by his house several times (once with Ignacio) and looked at him menacingly; apparently fired gunshots near the house of a friend of defendant's who was involved with defendant in the Wal-Mart fight with the Castros; and (with Ignacio and two others) threatened defendant's brother in a gang-related way.

Before the shooting at issue here, defendant had told Thao and Kue about what had happened at Wal-Mart, about Raymond's threats there, and about Raymond's driveby glares.

On the day before the shooting, Thao, accompanied by defendant, started a fight with Jaime Razo, the Castro brothers' cousin. During this fight, defendant said, Thao pulled out the gun that he usually carried—a "nine, [or a] .380 or something like that"—and yelled "HNS."

## DISCUSSION

## I.–III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. The Section 12022.53(d) and (e)(1) Firearm Enhancement

Defendant contends that his 25-year-to-life enhancement for firearm discharge by a coprincipal that caused death in a gang-committed felony (§ 12022.53(d) & (e)(1)) applies only if defendant had been convicted of one of the offenses specifically listed in that statute. We agree, and shall strike this enhancement.

---

[5] Raymond did have Norteño gang-related tattoos, and was a self-admitted Norteño gang member.

*See footnote, *ante*, page 148.

■ Enacted in 1997 as part of the so-called "10-20-Life" bill (Assem. Bill No. 4 (1997–1998 Reg. Sess.)), section 12022.53 imposes progressive sentence enhancements of 10 years, 20 years, or 25 years to life, for progressively egregious firearm use applicable to certain enumerated felonies. (§ 12022.53, subds. (b), (c) & (d), respectively; see also *id.*, subd. (a)(1)–(18); *People v. Garcia* (2002) 28 Cal.4th 1166, 1171 [124 Cal.Rptr.2d 464, 52 P.3d 648] (*Garcia*).) Section 12022.53(e)(1) "imposes vicarious liability under this section on aiders and abettors who commit crimes in participation of a criminal street gang." (*Garcia*, at p. 1171.)

At issue here is the 25-year-to-life enhancement set forth in section 12022.53(d), which may apply to a nonshooting aider and abettor in a gang-committed crime under that section's subdivision (e)(1).

As relevant here, section 12022.53(d) states: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a) [(subd. (a) lists 18 major felony offenses such as murder, rape, mayhem, and kidnapping)], [or] Section 246 [(shooting at an occupied car)] . . . , personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."

Section 12022.53(e)(1) specifies:

"The enhancements provided in this section [(i.e., subd. (b)—10 years; subd. (c)—20 years; or subd. (d)—25 years to life)] shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved:

"(A) The person violated subdivision (b) of Section 186.22 [(i.e., enhancement for felony offense committed on behalf of criminal street gang)][;] [and]

"(B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d)."

As pertinent here, defendant—who the evidence shows was the driver rather than the shooter in this fatal driveby shooting—was convicted of voluntary manslaughter (which is not an offense listed in § 12022.53), and found to have violated the gang enhancement of section 186.22, subdivision (b), in doing so. One of defendant's coprincipals, however, was convicted of murder (a § 12022.53-listed offense) and found to have committed an act specified in section 12022.53(d), arising from this same driveby shooting.

The question is, in light of these facts, was defendant, through his aiding and abetting of the homicide offense, "a principal in the commission of an offense" that made the section 12022.53(d) and (e)(1) enhancement applicable to him? Our answer: No.

We find our answer largely in *Garcia*.

*Garcia* involved a fatal driveby shooting committed by two gang members, one of whom was defendant Garcia. Garcia was the driver and not the shooter. The shooter was acquitted of all charges. Garcia, however, was convicted of second degree murder as an aider and abettor. The issue in *Garcia* was whether the 25-year-to-life enhancement under section 12022.53(d) and (e)(1) could legally be imposed upon Garcia in the absence of the shooter's conviction. The *Garcia* court answered, yes. (*Garcia, supra,* 28 Cal.4th at pp. 1169–1170, 1172–1174.)

*Garcia* reasoned that because an aider and abettor may potentially be guilty of a more serious offense than the direct perpetrator (i.e., the shooter), the absence of the shooter's conviction is not dispositive of the aider and abettor's exposure to liability. (*Garcia, supra,* 28 Cal.4th at p. 1173.) This potential for an aider and abettor's greater culpability stems from the different defenses or extenuating circumstances available to joint participants in an offense, and from the fact that while such participants might be tied to a common act, their individual mental states, and therefore their independent levels of guilt, may differ. (See *Garcia, supra,* 28 Cal.4th at p. 1173; *People v. McCoy* (2001) 25 Cal.4th 1111, 1114, 1118–1120 [108 Cal.Rptr.2d 188, 24 P.3d 1210] (*McCoy*).) The *Garcia* court saw "no basis to depart from this general principle of aider and abettor liability with respect to section 12022.53, subdivisions (d) and (e)(1), especially when the Legislature has expressed its clear intent to punish aiders and abettors in this context." (*Garcia,* at p. 1173.) *Garcia* also noted that " 'it was extremely clear that *someone* personally and intentionally discharged the firearm which killed [the victim], and that should be sufficient so long as the other requirements of section 12022.53, subdivision (e)(1), are satisfied.' " (*Id.* at p. 1172.)

Of course, in *Garcia*, defendant Garcia was convicted of a section 12022.53-enumerated offense: murder. (*Garcia, supra,* 28 Cal.4th at p. 1170.) That cannot be said of defendant here, whose voluntary manslaughter offense is not part of the rogues' gallery of section 12022.53 offenses. However, one

of defendant's coprincipals was convicted of murder. Does the coprincipal's murder conviction provide a sufficient basis on which to apply the section 12022.53(d) and (e)(1) enhancement to defendant? No.

■ *Garcia* emphasized the general principle that an enhancement does not exist in a vacuum: " ' "[A] defendant is not at risk for punishment under an enhancement allegation *until convicted of a related substantive offense.*" ' " (*Garcia, supra*, 28 Cal.4th at p. 1174, italics added, quoting *People v. Dennis* (1998) 17 Cal.4th 468, 500 [71 Cal.Rptr.2d 680, 950 P.2d 1035]; see also *People v. Smart* (2006) 145 Cal.App.4th 1216, 1226 [52 Cal.Rptr.3d 456] [an enhancement cannot define the crime, cannot be "the tail wagging the dog"].)

From this, *Garcia* concluded that in order to find an aider and abettor who is not the shooter liable under the section 12022.53(d) and (e)(1) enhancement, the prosecution must plead and prove "that (1) a principal *committed an offense enumerated in section 12022.53* . . . ; (2) a principal intentionally and personally discharged a firearm and proximately caused great bodily injury or death to any person other than an accomplice during the commission of *the* offense; (3) the aider and abettor was a principal in *the* offense; and (4) *the* offense was [gang] committed . . . ." (*Garcia, supra*, 28 Cal.4th at p. 1174, italics added.) *Garcia* then added: "Although the aider and abettor must first be *convicted of the underlying offense* before the enhancement may apply (*People v. Dennis, supra*, 17 Cal.4th at p. 500), the prosecution need not plead and prove the *conviction* of the offense by the principal who intentionally and personally discharged a firearm." (*Garcia*, at p. 1174, first italics added.) And, for good measure, *Garcia* quoted an appellate court's observation that section 12022.53(e)(1) " 'is expressly drafted to extend the enhancement for gun use in *any enumerated serious felony* to gang members who aid and abet *that* offense in furtherance of the objectives of a criminal street gang.' " (*Garcia, supra*, 28 Cal.4th at p. 1172, italics added, quoting *People v. Gonzales* (2001) 87 Cal.App.4th 1, 15 [104 Cal.Rptr.2d 247].)

■ For these reasons, we conclude that because defendant was convicted only of voluntary manslaughter (count I), rather than the section 12022.53-enumerated offense of murder, the enhancement under section 12022.53(d) and (e)(1) does not apply to him.

The People counter this conclusion by noting that, just as an aider and abettor may have a more culpable mental state than the direct perpetrator and therefore be convicted of a greater offense (see *Garcia, supra*, 28 Cal.4th

1166; *McCoy, supra*, 25 Cal.4th 1111), an aider and abettor may have a less culpable mental state than the direct perpetrator and therefore be convicted of a lesser homicide-related offense than what the direct perpetrator committed (see *People v. Nero* (2010) 181 Cal.App.4th 504 [104 Cal.Rptr.3d 616]; *People v. Samaniego* (2009) 172 Cal.App.4th 1148 [91 Cal.Rptr.3d 874]). In this way, the People argue, "the fact the jury concluded [defendant] had a less culpable [mental state] does not preclude a finding that he was a principal to Raymond's murder."

For two reasons, we are not persuaded. First, *Nero* and *Samaniego* had nothing substantively to do with the section 12022.53 enhancement. Second, and more importantly, by inverting the principle that an aider and abettor may be more culpable than the direct perpetrator—i.e., an aider and abettor may also be less culpable—the People have turned the principle on its head here. The section 12022.53(d) and (e)(1) enhancement is one of the most, if not the most, severe enhancements in California's sentencing scheme (equivalent to the sentence for first degree, premeditated murder—§ 190). The *Garcia* court was on solid legal ground in finding that this severe punishment could be applied to an aider and abettor convicted of the section 12022.53-enumerated offense of murder (even if the direct perpetrator, the shooter, was acquitted), because an aider and abettor may be found more culpable than the direct perpetrator. However, this solid legal ground turns to sand when an aider and abettor is convicted, not of the section 12022.53-enumerated offense of murder, but of the lesser, nonenumerated offense of voluntary manslaughter, and on a less culpable mental state at that.

We strike defendant's 25-year-to-life enhancement imposed under section 12022.53(d) and (e)(1). We strike as well defendant's analogous, stayed enhancements under section 12022.53, subdivisions (b) and (e)(1) and section 12022.53, subdivisions (c) and (e)(1). And, we impose the 10-year enhancement under section 186.22, subdivision (b)(1)(C), that the trial court previously imposed on defendant but stayed.

## DISPOSITION

As to count I, defendant's 25-year-to-life enhancement imposed under section 12022.53(d) and (e)(1) is stricken (as are the analogous, stayed enhancements under § 12022.53, subds. (b) & (e)(1) and § 12022.53, subds. (c) & (e)(1)). Also as to count I, the stay on defendant's 10-year enhancement under section 186.22, subdivision (b)(1)(C) is lifted, and that enhancement is imposed. As

so modified, the judgment is affirmed and defendant's aggregate sentence is 13 years eight months in state prison.[8] The trial court is directed to prepare an amended abstract of judgment to reflect these modifications and to send a certified copy to the Department of Corrections and Rehabilitation.

Blease, Acting P. J., and Raye, J., concurred.

---

[8] The recent amendments to section 4019 do not operate to modify defendant's entitlement to additional presentence custody credit as he was committed for a serious felony. (§§ 1192.7, subd. (c)(1), 4019, former subds. (b)(2) & (c)(2) [as amended by Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 50], 2933, subd. (e)(3) [as amended by Stats. 2010, ch. 426, § 1, eff. Sept. 28, 2010].)