Filed 8/6/14  P. v. Cook CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B247646 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA392115) |
| v. | |
| BRYAN COOK et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald S. Coen,  Judge.  Affirmed.

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant Bryan Cook.

Mark S. Givens, under appointment by the Court of Appeal, for Defendant and Appellant Travis O. Foster.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Blythe J. Leszkay and Tita Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

The jury convicted defendants Bryan Cook and Travis O. Foster of attempted premeditated murder, evading a police officer, and shooting at an occupied motor vehicle. It also convicted Foster of possession of a firearm by a felon, and found that he had suffered a prior serious felony conviction. The jury sustained criminal street gang and firearm allegations as to both defendants.

In this appeal from the judgment, Foster contends the trial court erred in admitting hearsay evidence, and Cook contends the evidence failed to support his conviction as an aider and abettor. For the reasons discussed below, we affirm the judgment.

## BACKGROUND

Defendants were charged with a gang-related shooting in which Foster was the driver and the shooter; Cook was the front passenger; and Marquis Graham, who entered a plea before trial pursuant to a negotiated agreement, was the rear passenger. The prosecution's theory was that defendants intended to shoot a rival gang member who drove a car similar to that of the victim and frequented the area where the shooting occurred. The prosecution's evidence showed the following:

At about 10:30 p.m. on December 21, 2011, Foster was driving a silver Dodge Charger on Brynhurst Avenue in Los Angeles. He stopped next to a white Buick Century that also was facing northbound. The driver of the Buick, Tamika Baul, saw Foster's face before he glanced around and began firing a gun through his front passenger window. After seeing muzzle flashes and hearing bullets striking her car, she ducked down onto the floorboard until the Dodge drove away. She was uninjured and ran to her friend's house to call 911. Los Angeles Police Department officers who responded to the call found several bullet holes in her driver's side door and recovered multiple shell casings.

Other officers in a nearby patrol car were heading toward the sound of the gunfire when they nearly collided with the Dodge. They could see the driver (Foster) but not the passengers. They activated their lights and siren and began pursuing the Dodge as it sped

2

through several stop signs and red lights, made unsafe turns, hit a pole, and went airborne before stopping due to two flat tires.  When officers illuminated the Dodge with their spotlight, they saw Foster and two passengers.  They detained Foster, who was wearing a dark hooded sweatshirt; Cook, the front passenger; and Graham, the rear passenger.

Officers immediately began searching the Dodge and retracing the pursuit route. In the Dodge, they found a live .45 caliber bullet on the right front floorboard and a Texas Rangers baseball cap in the trunk.  On the pavement along the pursuit route, they found two loaded guns, a pair of orange and black gloves, and a third orange and black glove.  One of the weapons, a .45 caliber handgun (the same caliber as the bullet found in the Dodge), was later matched to the bullets and spent casings that were recovered from the scene of the shooting.  Subsequent tests showed that the pair of gloves contained Cook's DNA, and the remaining glove contained the DNA of several contributors including Graham.

Shortly after defendants were detained, Baul was brought to view the Dodge and the three suspects.  During the viewing, she identified both the Dodge and the driver (Foster), stating, "That's him.  He is wearing the same hoodie, and that's the car. . . . That's the guy that shot at me."  During the shooting, Baul did not see anyone in the vehicle other than the driver.  She did not identify the front passenger (Cook) or the rear passenger (Graham).  At trial, she identified Foster as the driver who had fired a gun at her.

The prosecution's gang expert, Officer Manuel Esqueda, testified that in his opinion, Foster and Cook are members of the Hoover Criminals gang.[1]  He explained that his opinion was based on their tattoos, gang monikers, and relevant information obtained

---

[1]     Esqueda also described the primary activities and predicate criminal acts of the gang in accordance with Penal Code section 186.22.  His testimony on those points is not at issue on appeal and thus has been omitted from the opinion.

3

from other experienced gang officers. He stated that the gang's primary color is orange; the gloves that were found along the pursuit route were orange and black.[2]

Esqueda also explained that the shooting occurred deep in the territory of a rival gang, the Rollin' 60's. Gang members usually do not travel together into the heart of a rival gang's territory unless they intend to commit a crime for the benefit of their gang. By going as a group, the shooter is assured of having other gang members who will act as lookouts, provide motivation, and verify the crime to others.

When Esqueda was presented with a hypothetical situation that tracked the facts of this case, he opined that the crime would promote the reputation of the members who committed it, and would benefit their gang by creating fear within the community. In his opinion, the gang would benefit even if the victim was not a rival gang member.

Over a defense objection, the prosecution presented evidence regarding the intended target, Marquise Thomas. Esqueda testified that in his opinion (based on information received from an experienced gang officer, Officer Porter), Thomas was an original gangster or O.G. member of the Rollin' 60's gang. Officer Jonathan Kincaid— an experienced gang officer who encountered Thomas on five or six occasions and testified as an expert witness in other cases regarding the Rollin' 60's gang—similarly testified that in his opinion, Thomas was an O.G. member of the Rollin' 60's gang.[3]

Kincaid testified that he had personally observed Thomas in a white Buick and had encountered him on Brynhurst near where the shooting occurred. During a prior traffic stop, Thomas told Kincaid that his address was 6541 Brynhurst, which is on the same block where the shooting occurred.

---

[2] Officer Robert Coats testified that members of the gang's affiliate, the Eight Tray Hoovers, wear Texas Rangers clothing (the cap found in the Dodge was a Texas Rangers cap).

[3] On cross-examination, Kincaid testified that because Thomas, who was born in 1981, was not as old as the "true O.G.'s" who "are in their 40's and 50's," he could not "really say" that Thomas was a "true O.G." However, Kincaid testified that "due to [Thomas's] status within the gang, I guess the youngsters would call him O.G., somebody that they look up to, and that he is a little bit older."

Foster, who was in pro. per., testified in his own defense. He explained that on the night of the shooting, he was driving home from his mother's house when he stopped to give Cook and Graham a ride. He denied committing the shooting on Brynhurst. When he heard the gunshots, he claimed to be about three miles away from where the shooting occurred, and he tried to leave the area but was pulled over by the police for what he thought was a traffic stop. He did not lead the officers on a high speed chase. There were no guns in the car. He testified that Cook was in the rear seat and Graham was in the front seat. When they were ordered from the car, their belongings, including their phones, wallets, and gloves, were removed from their pockets. He previously belonged to the Hoover Criminals but is no longer an active member. Cook and Graham are still members of that gang. He has family members who live in the area of the shooting and are members of the Rollin' 60's gang.

In rebuttal, Officer Yolanda Mansillas-Valento testified that on the morning after the shooting, Foster told her that he was at home when he left to pick up Cook and Graham.

In closing argument, the prosecutor argued that defendants were attempting to murder "a rival, Marquise Thomas," who was seen driving a white Buick and "was known to reside on the same street, same block" where the shooting occurred. The prosecutor argued that Foster was the driver and the shooter, and Cook was the front passenger. He argued that Cook had aided and abetted the crimes by accompanying Foster on an armed "mission" into "rival territory to attack the enemy" for the benefit of their gang, by "ducking" out of the way to give Foster a "clear shot" through the open front passenger's window, and by giving Foster moral support and acting as his "backup."

The jury found Cook and Foster guilty of attempted premeditated murder (Pen. Code, §§ 664, 187, subd. (a), count 1);[4] evading a police officer (§ 2800.2, subd. (a), count 2); and shooting at an occupied motor vehicle (§ 246, count 3). The jury convicted

---

[4]     Unless otherwise indicated, all further statutory references are to the Penal Code.

5

Foster of possession of a firearm by a felon (§ 12021, subd. (a)(1), count 4), and found that he had sustained a prior serious felony conviction (§ 667, subd. (a)(1)). It found the criminal street gang (§ 186.22, subd. (a)) and firearm allegations (§ 12022.53) to be true as to both defendants. The trial court imposed determinate and indeterminate sentences as to both defendants.[5] Defendants timely appealed from the judgment.

## DISCUSSION

### I. Hearsay Evidence

Foster contends the opinion testimony of Officers Esqueda and Kincaid concerning Thomas's gang membership was based on unreliable hearsay statements. He argues that Kincaid's testimony concerning Thomas's hearsay statement that he lived at 6541 Brynhurst was inadmissible. He contends the incompetent hearsay evidence was essential to the prosecution's theory that Thomas was the intended target, and that without this theory the prosecution "would have been stuck with the unimpressive

---

[5] Foster received the following consecutive sentences: On count 2 (evading a police officer), a seven-year base term, consisting of four years (double the midterm of two years pursuant to §§ 1170.12, subds. (a)-(d), and 667, subds. (b)-(i)), plus three years for the gang enhancement (§ 186.22, subd. (b)(1)). On count 4 (possession of a firearm by a felon), a term of seven years and four months, consisting of 16 months (double the midterm of eight months), plus one year (one-third the midterm of three years) for the gang enhancement (§ 186.22, subd. (b)(1)), plus five years for the prior conviction allegation (§ 667, subd. (a)(1)). On count 1 (attempted murder), life with the possibility of parole after a minimum of 30 years in state prison (§§ 1170.12, subd. (a)-(d), 667, subds. (b)-(i)), plus 20 years in state prison pursuant to section 12022.53, subdivision (c). The sentence on count 1 was to run consecutively to the sentences on counts 2 and 4. The sentence on count 3 (shooting at an occupied motor vehicle and all enhancements) was imposed and stayed under section 654.

Cook received the following consecutive sentences: On count 2 (evading a police officer), a five-year base term, consisting of the midterm of two years, plus three years for the gang enhancement (§ 186.22, subd. (b)(1)). On count 1 (attempted murder), life with the possibility of parole after a minimum term of 15 years pursuant to section 186.22, subdivision (b)(5). The sentence on count 3 (shooting at an occupied motor vehicle and all enhancements) was imposed and stayed under section 654.

opinion by the gang expert that the mere fact that three gang members were in a car together in rival gang territory establishes that they were out to commit some heinous act for the benefit of their gang." We disagree.[6]

The Supreme Court set forth the applicable law on this issue in *People v. Gardeley* (1996) 14 Cal.4th 605 (*Gardeley*). *Gardeley* provides that "[s]o long as this threshold requirement of reliability is satisfied, even matter that is ordinarily *inadmissible* can form the proper basis for an expert's opinion testimony. (*In re Fields* (1990) 51 Cal.3d 1063, 1070 [expert witness can base 'opinion on reliable hearsay, including out-of-court declarations of other persons'] . . . .) And because Evidence Code section 802 allows an expert witness to 'state on direct examination the reasons for his opinion and the matter . . . upon which it is based,' an expert witness whose opinion is based on such inadmissible matter can, when testifying, describe the material that forms the basis of the opinion. (*People v. Shattuck* (1895) 109 Cal. 673, 678 [medical expert could testify to patient's complaints in order 'to give a clinical history of the case to understand the significance of her symptoms']; *McElligott v. Freeland* (1934) 139 Cal.App. 143, 157-158 [certified public accountant could testify to information he relied on in property valuation] . . . .)" (*Gardeley*, *supra*, at pp. 618-619.)

Before trial, Cook filed an in limine motion (joined by Foster) to exclude information regarding Thomas's address and vehicle as unreliable hearsay evidence that was based on "nothing more than a station house or street rumor." But in response to the prosecutor's representation that the information regarding Thomas was reliable and that other officers were available to testify that they had stopped Thomas while he was driving a white Buick, the trial court concluded the information could form the proper basis for an expert opinion under *Gardeley* and denied the in limine motion.

At trial, Cook repeated his objections to Esqueda's and Kincaid's testimony concerning Thomas. The trial court again overruled the objection, stating, "It's the basis

---

[6] Cook joined in Foster's arguments. We reject Cook's contentions for the reasons discussed.

of the opinion. It's overruled."[7]  As a result, Esqueda and Kincaid were permitted to testify that in their expert opinion, Thomas was an O.G. member of the Rollin' 60's gang.

On appeal, Cook argues the expert testimony on the issue of Thomas's gang membership was improper.  Other courts have held, however, that whether a person belongs to a criminal street gang is a proper subject of expert testimony.  (*People v. Duran* (2002) 97 Cal.App.4th 1448, 1464 ["an individual's membership in a criminal street gang is a proper subject for expert testimony"].)  We similarly conclude that expert testimony is admissible on this subject because the average person is not qualified to understand the gang-related significance of tattoos, gang monikers, and field information cards without the assistance of an expert.

Cook argues that Esqueda should not have referred to Officer Porter as a source of information concerning Thomas's gang affiliation.  We disagree.  Under *Gardeley*, Esqueda was entitled to mention the source of the material that he relied upon to form his expert opinion.  (*Gardeley*, *supra*, 14 Cal.4th at pp. 618-619.)

Cook also challenges the admission of Kincaid's expert opinion regarding Thomas's gang affiliation.  The record is undisputed, however, that Kincaid is a veteran officer with extensive knowledge and experience regarding the Rollin' 60's gang, and that he has had five or six personal encounters with Thomas.  He thus was qualified to offer an expert opinion as to whether Thomas was a member of this particular gang.

Cook objects to the admission of Kincaid's testimony concerning Thomas's hearsay statement that he lived at 6541 Brynhurst.  Because a criminal street gang is comprised of persons who live within the area controlled by that gang, the home address

---

[7]     The Attorney General argues that Foster forfeited the issue on appeal by failing to join in Cook's objections at trial.  We disagree.  Although a defendant is obligated to raise a timely hearsay objection at trial in order to preserve the issue for appellate review, we conclude that because the record indicates any additional objection by Foster would have been equally unsuccessful and therefore futile, he is excused from making a timely objection.  (See *People v. McKinnon* (2011) 52 Cal.4th 610, 654 [failure to object did not constitute a waiver because the objection would have been futile].)

that Thomas provided was relevant to determining his gang affiliation. Under *Gardeley*, Kincaid's reference to the source of the information was proper.

To the extent Cook's argument is that Thomas's home address should not have been introduced for the truth of the matter asserted (i.e., to prove that Thomas actually lived at that address), we note there is no sua sponte duty to give a limiting instruction. "Ordinarily, the use of a limiting instruction that matters on which an expert based his opinion are admitted only to show the basis of the opinion and not for the truth of the matter cures any hearsay problem involved[.]" (*Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 789.) However, "[t]he court is not required to give such limiting instructions *sua sponte*. (Evid. Code, § 355 . . . .)" (*Ibid.*) The same rule applies in criminal cases. (*People v. Kendrick* (1989) 211 Cal.App.3d 1273, 1277-1278.)

In any event, any error in admitting the hearsay evidence concerning Thompson's address was not prejudicial under either the *Watson* or *Chapman* standard of prejudice.[8] In evaluating challenges to evidentiary rulings, we must look at all the evidence, both supporting and contradicting the judgment, to determine whether, had Thomas's extrajudicial statement been excluded, the jury might have drawn different factual conclusions. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) In light of Kincaid's percipient testimony that he had seen Thomas on Brynhurst Avenue on several occasions, any additional harm that resulted from the admission of Thomas's hearsay statement regarding his home address was not unduly prejudicial. Even in the absence of any evidence that Thomas was the intended victim, the jury had ample evidence to find that defendants had ventured into the heart of a rival gang's territory in order to commit a shooting that would enhance their reputation and benefit their gang regardless whether the victim was a rival gang member or an innocent bystander.

Finally, we reject any challenge to the admission of Kincaid's percipient testimony regarding Thomas's car and the area he frequents. Such testimony was not hearsay because it was based on the officer's personal observations.

---

[8] *People v. Watson* (1956) 46 Cal.2d 818, 834; *Chapman v. California* (1967) 386 U.S. 18, 23.

9

## II. Cook's Liability as an Aider and Abettor

Cook contends the evidence was insufficient to support his convictions on counts 1 (attempted murder) and 3 (shooting at an occupied motor vehicle), because the jury could not have found beyond a reasonable doubt that he aided and abetted in their commission. We are not persuaded.

"In reviewing a criminal conviction challenged as lacking evidentiary support, "'the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" (*People v. Hillhouse* [(2002)] 27 Cal.4th [469,] 496.) The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11) . . . . An appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence. (*Rodriguez*, *supra*, at p. 11.)" (*People v. Maury* (2003) 30 Cal.4th 342, 396 [*Maury*].)

As explained in *People v. McCoy* (2001) 25 Cal.4th 1111 (*McCoy*), "an aider and abettor's liability for criminal conduct is of two kinds. First, an aider and abettor with the necessary mental state is guilty of the intended crime. Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted.' (*People v. Prettyman* [(1996)] 14 Cal.4th [248,] 260.)" (25 Cal.4th at p. 1117.) However, in this case, as in *McCoy*, "the trial court did not instruct the jury on the natural and probable consequences doctrine. It instructed only on an aider and abettor's guilt of the intended crimes. Accordingly, only an aider and abettor's guilt of the intended crime is relevant here." (*Ibid.*)

In order for a defendant to be found guilty as an aider and abettor, he or she "must do something *and* have a certain mental state." (*McCoy*, *supra*, 25 Cal.4th at p. 1117.) "[O]utside of the natural and probable consequences doctrine, an aider and abettor's

10

mental state must be at least that required of the direct perpetrator.  'To prove that a defendant is an accomplice . . . the prosecution must show that the defendant acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense."  ([*People v. Beeman* (1984) 35 Cal.3d 547,] 560, italics in original.)  When the offense charged is a specific intent crime, the accomplice must "share the specific intent of the perpetrator"; this occurs when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime."  (*Ibid.*)'  (*People v. Prettyman*, *supra*, 14 Cal.4th at p. 259.)  What this means here, when the charged offense and the intended offense— murder or attempted murder—are the same, i.e., when guilt does not depend on the natural and probable consequences doctrine, is that the aider and abettor must know and share the murderous intent of the actual perpetrator."  (*McCoy*, *supra*, 25 Cal.4th at p. 1118, fn. omitted.)

The Supreme Court summarized the above principles, stating, "Thus, proof of aider and abettor liability requires proof in three distinct areas:  (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime.  (See *McCoy*[, *supra*, 25 Cal.4th] at p. 1117.)"  (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)

Applying the above principles to this case, we conclude the jury could reasonably infer from the evidence that Cook intentionally encouraged and assisted Foster to kill a rival gang member, Thomas, by accompanying Foster on an armed mission to the neighborhood that Thomas was known to frequent, locating a white Buick that was similar to the car that Thomas was known to drive, ducking down in the front passenger's seat to give Foster a clear shot at the driver of the white Buick, and tossing weapons and gloves from the Dodge during the police pursuit.  These inferences, which are reasonably supported by the evidence, are indicative of Cook's knowledge of Foster's intent to kill

11

Thomas and of Cook's intent to assist Foster in doing so. (See *People v. Garcia* (2008) 168 Cal.App.4th 261, 273 ["Factors to be considered by the trier of fact in determining 'whether one is an aider and abettor include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime.' (*People v. Jones* (1980) 108 Cal.App.3d 9, 15.)"].) Because "[a]n appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence" (*Maury*, *supra*, 30 Cal.4th at p. 396), we conclude that Cook's convictions of attempted murder and shooting at an occupied vehicle are supported by substantial evidence.

Cook's reliance on *Juan H. v. Allen* (9th Cir. 2005) 408 F.3d 1262 (*Juan H.*) is misplaced. In that case, the defendant, a minor, was standing behind his brother during a confrontation with two rival gang members. The brother pulled out a shotgun that was either in the front of his pants or at his side, and shot at both rival gang members, killing one. The other rival member was not injured. During the shooting, the defendant did not say anything, make any gestures, or otherwise encourage his brother, who fled from the scene in his car and was not captured. The defendant did not flee, but went home after the shooting. The Ninth Circuit granted the defendant's petition for writ of habeas corpus, finding the evidence insufficient to support his conviction as an aider and abettor of the murder and attempted murder of the rival gang members.

This case is distinguishable from *Juan H.* because, as previously mentioned, Cook was not a passive observer of the shooting, but an active participant who traveled into a rival gang's territory with loaded handguns and gloves, ducked out of the way so that Foster could shoot at the driver of a vehicle similar to that of a rival gang member, and tossed the incriminating handguns and gloves out of the car while fleeing from the police. Because we are required to accept the logical inferences that the jury might have drawn from the circumstantial evidence (*Maury*, *supra*, 30 Cal.4th at p. 396), *Juan H.* does not require a reversal of the convictions in this case.

12

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, J.[*]

We concur:


EPSTEIN, P. J.


WILLHITE, J.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.