Filed 10/20/21  In re A.S. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | 2d Crim. No. B307533 (Super. Ct. No. YJ39568) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>A.S.,<br><br>    Defendant and Appellant. | |

            A.S. appeals from an order adjudicating him a ward of the court.  (Welf. & Inst. Code, § 602.)  The juvenile court found true allegations he committed two counts of robbery (Pen. Code,[1] § 211; counts 1 and 3), one count of attempted robbery (§§ 211,

_____

            [1] Further unspecified statutory references are to the Penal Code.

664; count 5), and three counts of assault with a firearm (§ 245, subd. (a)(2); counts 2, 4, and 6).  The court ordered A.S. to be placed in community camp for five to seven months with a maximum confinement period of nine years six months.

With exception to one count of robbery, A.S. contends the juvenile court's true findings must be reversed because there was insufficient evidence to support them.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

### *Chayos Market*

Jesus Aguilar was working at Chayos Market when he saw two youths wearing ski masks enter the store.  He described one youth as being short and "chubby," wearing a red shirt and a ski mask with a marijuana symbol on it.  The other youth was taller and "skinnier," wearing a gray or white sweater.  The shorter youth grabbed a Gatorade and placed it on the counter.  The taller youth stood close by and stayed quiet the entire time.

The shorter youth asked Aguilar if he had change for a $100 bill.  When Aguilar said "yes," the shorter youth pulled out a gun from his backpack and pointed it in the direction of Aguilar but downwards toward the counter.  Aguilar noticed there was a red marker on the gun.  Aguilar said the taller youth looked "a little shocked" when he saw the gun.  The shorter youth asked Aguilar for the money in the cash register.  Aguilar told him that he needed his boss to open the register.  When Aguilar's boss entered the store, the shorter youth quickly put the gun away.  The shorter youth asked the boss if she had change for a $100 bill, and she said "no."  The two youths walked away from the store without taking anything.

### *Tony's Market*

About 40 minutes later, two youths entered Tony's Market. Maria Serrano, who was working at the store, described one youth as "chubby" and wearing a red shirt and shorts with a black stripe. She described the other youth as "thin," wearing a black shirt and black pants, and wearing his hair in a ponytail. She later identified A.S. as the thin youth. One of the youths asked Serrano if she accepted E.B.T. She said "yes."

A.S. picked up a Powerade and placed it on the counter. He told Serrano that the other youth would pay for the drink, and then he stood by the front door. The other youth approached Serrano, removed a gun from a bag around his chest, pointed the gun towards her, and demanded that she give him the money from the cash register. He then went around the counter, took the money from the register, and put it in his backpack. The two youths ran away. The robbery was recorded by a surveillance camera.

### *Alexa's 99-Cent Store*

About 15 minutes later, Rocio Rodriguez was working at Alexa's 99-Cent Store when a youth, who she later identified as A.S., entered the store. A.S. was "covered up," wearing all black, and wearing a bandana that had marijuana symbols on it.

A.S. asked Rodriguez if the store had an A.T.M. Rodriguez said, "no," and A.S. left. A few moments later, A.S. returned with another youth, who was "chubby" and "covered up." They picked up a Powerade and went to the register. A.S.'s companion pointed a gun at Rodriguez and demanded money from the register.

Rodriguez took out the register drawer and placed it on the counter. A.S.'s companion began grabbing the money from

the register drawer. A.S. told Rodriguez, "Give us the 20's," and she told him she did not have any. A.S. reached through an open space in the plexiglass divider and tried to grab money. A surveillance camera recorded the robbery.

*Arrest and Investigation*

Police officers were investigating the attempted robbery at Chayos Market when they received a report that two youths matching the description of the suspects were seen on a nearby street. The police traveled to the street and saw A.S. with a youth wearing a red shirt. When the police attempted to stop them, A.S. stopped and the other youth began to run. During the pursuit, the youth removed a black fanny pack from his backpack and threw it over a fence. The police caught and arrested the youth. When the officers later recovered the fanny pack, they found a loaded gun and $166 (51 one-dollar bills, 15 five-dollar bills, and two 20-dollar bills) inside.

The officers conducted a field show-up identification with the employees from each store. Aguilar identified the youth in the red shirt as the same person who had the gun at Chayos Market. He was able to identify him by his red shirt, body shape, height, skin color, and the way he spoke. He could not identify A.S. because the taller suspect wore a sweater and ski mask over his face, and "all [he] could see was his eyes." However, he told the officers that A.S. matched the height of the suspect.

Serrano identified both A.S. and his companion as the two youths who robbed Tony's Market. She testified that she was "very sure who they were." Serrano also identified A.S. during the adjudication hearing.

Rodriguez identified A.S. as the one of the youths who robbed her at Alexa's 99-Cent Store. She recognized him

4

because of his hairstyle.  She could not identify the youth in the red shirt.  Rodriguez also identified A.S. during the adjudication hearing.

## DISCUSSION

A.S. contends there was insufficient evidence that (1) he was one of the perpetrators in the attempted robbery at Chayos Market, (2) he aided and abetted the crimes at the Chayos Market, (3) he aided and abetted the crimes at Tony's Market, and (4) that the other perpetrator committed assault.  We disagree with all four contentions.

We review the findings for substantial evidence.  We review "the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 605.)  "'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.  [Citation.]'  [Citation.]"  (*People v. Clark* (2011) 52 Cal.4th 856, 943.)

*Evidence of A.S.'s Identity in the Chayos Market Incident*

A.S. argues there is insufficient evidence to support a finding that he was one of the perpetrators in the attempted robbery.  We conclude otherwise.

Substantial evidence supports the juvenile court's finding that A.S. was the "taller" perpetrator in the Chayos Market incident.  First, this incident was the first of three incidents at small stores within the same vicinity within a one-hour period.  All three incidents were similarly planned robberies:  the two youths would retrieve a sports drink, place it

5

on the counter, and then demand money from the cash register. In each instance, the youth in the red shirt held the gun while the other youth stood nearby. All the witnesses similarly described the two perpetrators: one was taller and "skinnier," and the other was "chubbier," shorter, and wore a red shirt. Although Aguilar could not identify A.S. as the taller perpetrator, he told the police officers that A.S. matched the height of the taller perpetrator and witnesses in two subsequent robberies identified A.S. as the taller youth. Moreover, A.S. and the youth in the red shirt were found together shortly after the robberies.

A.S. contends the evidence was insufficient because Aguilar could not identify A.S. in the field show-up, and he described the perpetrator as wearing a gray or white sweater, and not a dark colored shirt. We do not reweigh conflicting evidence or resolve evidentiary conflicts on appeal. (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 200.) We will affirm where, as here, the findings are supported by substantial evidence in the record.

*Evidence of Aiding and Abetting at Chayos Market*

A.S. contends there is insufficient evidence that he aided and abetted the crimes at the Chayos Market. He argues he was merely a "knowing spectator" at the scene of the crime. (*People v. Bishop* (1996) 44 Cal.App.4th 220, 234.) We are not persuaded.

A person who aids and abets a crime is guilty of that crime. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) A true finding for aiding and abetting requires that the person (1) acts with knowledge of the unlawful purpose of the perpetrator, (2) intends to commit, encourage, or facilitate the commission of the crime, and (3) aids, promotes, or encourages the commission of

6

the crime.  (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.) "Neither mere presence at the scene of a crime, nor the failure to take steps to prevent a crime, is alone sufficient to establish that a person is an aider and abettor.  Such evidence may, however, be considered together with other evidence in determining that a person is an aider and abettor." (*In re Jose T.* (1991) 230 Cal.App.3d 1455, 1460.) Other factors relevant to determine whether a person is an aider or abettor include "companionship, flight, and conduct before and after the crime." (*People v. Jones* (1980) 108 Cal.App.3d 9, 15.)

Substantial evidence supports the finding that A.S. aided and abetted the attempted robbery and assault with a firearm at the Chayos Market.  During the incident, A.S. and his companion entered the store together, both wearing ski masks over their faces.  A.S. stood next to his companion during the entire attempted robbery, including when his companion withdrew the firearm, and he never tried to prevent the crime. After the robbery failed, A.S. left the scene of the crime with his companion.  Thereafter, A.S. and his companion robbed two other stores in the same way they attempted to rob the Chayos Market. This evidence showed that A.S. was not merely present at the crime scene, but acted with the same intent and knowledge as his companion.

A.S. argues there was insufficient evidence that he had the requisite knowledge to aid and abet assault with a firearm, citing the evidence that he looked "shocked" when his companion took out the gun.  However, a "person may aid and abet a criminal offense without having agreed to do so prior to the act." (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 531.)  "[I]t is not necessary that the primary actor expressly communicate

7

his criminal purpose to the defendant since that purpose may be apparent from the circumstances. [Citations.] Aiding and abetting may be committed 'on the spur of the moment,' that is, as instantaneously as the criminal act itself." (*Id.* at pp. 531-532.) Here, A.S. continued to stand near his companion and did nothing to stop him even after the gun was drawn. He then helped his companion rob two more stores. Under these circumstances, the evidence is sufficient that A.S. aided and abetted the assault with a firearm.

*Evidence of Aiding and Abetting at Tony's Market*

A.S. contends there is insufficient evidence that he aided and abetted the crimes at Tony's Market. This contention lacks merit.

Here, 40 minutes after the Chayos Market incident, A.S. and his companion entered Tony's Market, using the same modus operandi. A.S. picked up a Powerade, placed it on the counter, and then stood by the front door. A.S. knew his companion had a gun, and stood by while his companion withdrew the gun, pointed it towards the employee, and took money from the register. A.S. and his companion then fled together and proceeded to rob a third store. This evidence is more than sufficient to show that A.S. was not merely present, but aided and abetted the robbery and assault at Tony's Market.

*Evidence of Assault*

A.S. contends the three counts of assault with a firearm (§ 245, subd. (a)(2)), require reversal because there was insufficient evidence that his companion actually committed an assault. He contends the evidence merely shows an intent to intimidate the store employees. We disagree.

8

"Assault is defined as "an unlawful attempt, *coupled with a present ability*, to commit a violent injury on the person of another." (§ 240, italics added.) "Once a defendant has attained the means and location to strike immediately he has the 'present ability to injure.""" [Citation.]" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

Pointing a gun at a victim may constitute an assault with a deadly weapon, whether or not it is fired. (*People v. Laya* (1954) 123 Cal.App.2d 7, 16; see also *People v. Rivera* (2019) 7 Cal.5th 306, 333 [intentionally displaying a firearm in a menacing manner alone may be sufficient to establish assault].) "[I]t is a defendant's action enabling him to inflict a present injury that constitutes the actus reus of assault. . . . [¶] [W]hen a defendant equips and positions himself to carry out a battery, he has the 'present ability' required [for assault] if he is capable of inflicting injury on the given occasion, even if some steps remain to be taken, and even if the victim or the surrounding circumstances thwart the infliction of injury." (*People v. Chance* (2008) 44 Cal.4th 1164, 1172.)

"[I]t [i]s not necessary that the prosecution . . . show that the [minor] actually made an attempt to . . . use the [firearm] upon [the victim]." (*People v. McCoy* (1944) 25 Cal.2d 177, 189, italics omitted.) "The drawing of a weapon is generally evidence of an intention to use it. . . . [W]hen the party draws the weapon . . . [and] holds it in such a position as enables him to use it before the other party could defend [themselves], at the same time declaring his determination to use it . . . , the jury are fully warranted in finding that such was his intention." (*People v. McMakin* (1857) 8 Cal. 547, 549 (*McMakin*).)

9

Substantial evidence supports the three counts of assault with a deadly weapon.  In each incident, A.S.'s companion pointed the gun toward the employee and demanded that they give him the money in the register.  This evidence supports a finding that the companion had the requisite intent to support the true findings.  (See *McMakin*, *supra*, 8 Cal. at pp. 548-549 [intent element of assault is met where a defendant threatens to use a firearm if certain conditions are not met and is in a position to carry out the threat].)

To the extent A.S. argues the assault offense against Aguilar cannot be upheld because A.S.'s companion did not point the gun directly at Aguilar, this argument lacks merit.  The companion held the gun in a position where he could have used the gun instantly.  (See *People v. Thompson* (1949) 93 Cal.App.2d 780, 782 [pointing a revolver downward but toward a person supports a conviction of assault with a deadly weapon because the gun "was in a position to be used instantly"].)  Substantial evidence supports all three counts of assault with a firearm.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


TANGEMAN, J.


We concur:


YEGAN, Acting P. J.          PERREN, J.


10

Kevin L. Brown, Judge

Superior Court County of Los Angeles

_____

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, William H. Shin and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.