Filed 8/25/20

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B298575 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA083608) |
| v. | |
| ANHTU TRUNG NGUYEN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Lonergan, Judge. Affirmed.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Anhtu Trung Nguyen, who pleaded guilty to second degree murder in 2006, appeals from an order denying his petition for resentencing under Penal Code[1] section 1170.95, a statute which permits a person convicted of felony murder or murder under a natural and probable consequences theory to petition the court to have the murder conviction vacated and to be resentenced, if the person could not be convicted of murder today in light of amendments to sections 188 and 189.  Senate Bill No. 1437, which added section 1170.95 and amended sections 188 and 189, was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1(f), p. 6674; §§ 188, subd. (a)(3) & 189, subd. (e).)

Nguyen contends he made a prima facie showing that he is entitled to relief under section 1170.95, and therefore the trial court erred in summarily denying his petition for resentencing without issuing an order to show cause and holding an evidentiary hearing.  Nguyen based his prima facie showing on his form petition, the transcripts from the preliminary and plea hearings on the murder charge, and briefing filed by counsel whom the trial court appointed to represent Nguyen in connection with the petition.  As explained below, we conclude Nguyen is not entitled to an order to show cause and an evidentiary hearing because he did not make the requisite prima facie showing that he was convicted of felony murder or murder

---

[1] Further statutory references are to the Penal Code.

under a natural and probable consequences theory. Instead he bases his petition on his contention the prosecution presented insufficient evidence at the preliminary hearing demonstrating he aided and abetted the charged offenses with murderous intent. A petition under section 1170.95 is not a vehicle for such a collateral attack on a guilty plea. Accordingly, we affirm the order denying his petition.

## BACKGROUND

Nguyen and his codefendant Daniel Kevin Barry were charged with and pleaded guilty to the murder of Charles Kim (§ 187, subd. (a)) and the attempted murder of Daniel Roe (§§ 664 & 187). Nguyen and Barry also admitted a firearm enhancement allegation in connection with each offense: Barry admitted he personally and intentionally discharged a firearm within the meaning of section 12022.53, subdivision (c), and Nguyen admitted a principal used a firearm within the meaning of section 12022.[2] It is undisputed on appeal that only codefendant Barry fired a gun.

## I.    Preliminary Hearing

Anthony Baertschi, a man who drove Nguyen and Barry to the crime scene, testified at the June 15, 2006 preliminary hearing.[3] According to Anthony's testimony, about a week to a

---

[2] Neither the information nor the abstract of judgment is included in the record on appeal. The charges, convictions, and sentence are evident based on the transcripts from the preliminary and plea hearings, which are part of the record on appeal.

[3] Because both Anthony Baertschi and his wife Karla Baertschi testified at the preliminary hearing, we refer to them as "Anthony" and "Karla" (with no surname) to avoid confusion.

3

week and a half before the shooting, Nguyen told Anthony, in codefendant Barry's presence, that Nguyen was "mad" about some "dope that he got." Nguyen did not tell Anthony at that time the identity of the person he was mad at, but he did tell Anthony that he (Nguyen) had "to get him back." Nguyen did not explain at that point how he planned to get the person back. Anthony described Nguyen as "angry and furious" during that conversation.

Anthony further testified that on November 26, 2005, the date of the shooting, he met with Nguyen and Barry at Barry's house. Nguyen asked Anthony to drive them "somewhere" to "pay someone that he [Nguyen] owed." Anthony had seen Nguyen with money when Anthony arrived at Barry's house. Anthony agreed to drive Nguyen and Barry in his pickup truck. While Anthony was driving, Nguyen was talking to someone on a cell phone, "trying to find a location" to meet. When they arrived at the location, Nguyen instructed Anthony "to park and wait." Barry exited the truck and Nguyen stayed inside the truck with Anthony. Before Barry exited the truck, Anthony observed that Barry had money on him.

Daniel Roe, the attempted murder victim, also testified at the preliminary hearing. Roe testified that on November 26, 2005, the date of the shooting, he drove his cousin, Charles Kim, to a meeting. As Roe drove, Kim was talking on a cell phone and directing Roe to a location. Roe heard Kim say Nguyen's and Barry's names as Kim talked on the phone. When Roe drove up to the location (a parking lot), he saw Barry, who was dressed in all black, standing on a corner.[4] Roe was in the driver seat and

_____

[4] Roe had met Barry before and knew Barry as his cousin's friend.

Kim was in the front passenger seat. Barry climbed into the back seat of Roe's vehicle. "A couple seconds later," Roe "heard a click in back of [his] head." Roe turned around and saw that Barry was holding a gun. Roe asked Barry "what he was doing," and Barry responded that "he was just messing around." Kim turned around and told Barry to put the gun away. "[A] couple of seconds later," Roe "heard a boom." Kim had been shot. Kim's body fell toward Roe. Barry exited the vehicle and then fired another shot, aimed at Kim, whose body was "sort of in line" with Roe's body. Roe drove out of the parking lot and approached a police patrol car for assistance. Kim's gunshot wound was fatal. Roe was not struck by gunfire.

Returning to Anthony's preliminary hearing testimony, Anthony stated that "awhile" after Barry exited the pickup truck, Anthony heard two gunshots. Barry ran back to the pickup truck and climbed inside. Both Barry and Nguyen instructed Anthony to drive away. Anthony drove to his house. He described the three of them as "jittery and nervous and just out of it" when they arrived at his house. Nguyen "said that it was done." Barry stated that he had shot someone twice and then the gun jammed. Both Nguyen and Barry told Anthony that Barry had used a ".45 Ruger" in the shooting, but Anthony never saw a gun. Nguyen asked Anthony if he knew who Barry had shot, and Anthony said he did not. Nguyen told Anthony the victim was Charles Kim, someone Anthony had known for a couple years.

Anthony further testified that later the same night, he drove Nguyen to a friend's home. Barry spent the night at Anthony's home. The next morning after the shooting, Barry told Anthony that what happened the night before "was a favor" for Nguyen and that, in exchange for doing the favor, he (Barry) was

going to receive $2,000 in cash. Later, Nguyen told Anthony that he (Nguyen) was going to give Barry $700, so Barry "could live off of it." Nguyen did not explain to Anthony why he was going to give Barry the money. Sometime after the shooting, Nguyen told Anthony that he had been referring to Charles Kim when he told Anthony a week to a week and a half before the shooting that he wanted to get someone back because of a bad dope deal.

As mentioned above, Karla Baertschi, Anthony Baertschi's wife, also testified at the preliminary hearing. She was at her home when Anthony, Nguyen, and Barry arrived after the shooting. When she opened the front door for them, she noticed that Barry was "jittery"; Nguyen was acting "normal"; and Anthony appeared "shocked." She heard Barry ask Anthony, "Do you know who it was?" Anthony said he did not, and Nguyen told him, "It was Kim." Then there was silence. According to Karla's testimony, "Everybody was kind of still in kind of shock." (*Sic*.) At some point that evening, Karla heard Barry say, "I fucked up. I fucked up." She also heard Barry say that he tried to "get [the driver] too," but he "couldn't finish" because the gun "jammed." Karla heard Nguyen say, "We got someone back. We did something bad." At some point, Anthony and Karla talked with Nguyen about an alibi for the day of the shooting. Nguyen told them everyone should have "the same story."

At the conclusion of the prosecution's presentation of evidence, Nguyen's counsel argued Nguyen should not be held on the murder charge, asserting: "There is no evidence that he was a look-out or a get away [*sic*] or an aider or abettor."[5] In

_____

[5] At the preliminary hearing, Nguyen's counsel did not suggest that Nguyen should be held to answer on a charge other than murder and attempted murder. As discussed below,

response, the prosecutor summarized evidence in support of the prosecution's theory that Nguyen "clearly aided and abetted in this murder whether it was merely by encouraging Mr. Barry to commit the murder, paying Mr. Barry to commit the murder, coordinating with the victim in an effort to establish the meeting location." Other than aiding and abetting, the prosecution presented no other theory of Nguyen's liability for the charged offenses. There was no mention of felony murder or the natural and probable consequences doctrine.

The trial court held Nguyen and Barry to answer for the murder of Charles Kim (§ 187, subd. (a)) and the attempted murder of Daniel Roe (§§ 664 & 187), with firearm enhancement allegations under section 12022.53.[6] Nguyen and Barry were not charged with any offense other than murder and attempted murder.

## II. Guilty Plea and Sentencing

On October 25, 2006, trial was set to commence, and the parties announced they were ready. The prosecutor informed the trial court that the prosecution wanted to introduce "statements made by both defendants together in the presence of others." The prosecutor summarized the statements for the court, based on the

---

Nguyen now argues the evidence presented at the preliminary hearing could have supported a charge of battery, witness intimidation, or brandishing a weapon.

[6] The charges against Nguyen and Barry also included a gang enhancement allegation under section 186.22, and the prosecution presented evidence at the preliminary hearing in support of that allegation. On October 25, 2006, the date trial was set to commence, the prosecution informed the trial court that it was no longer proceeding on the gang enhancement allegation.

police reports regarding the shooting. The gist of the statements, as pertinent to this appeal, is that both Nguyen and Barry told others that Nguyen instructed Barry to kill Kim, and Nguyen paid Barry for doing so. After hearing argument from the parties regarding admissibility of the statements, the court took its lunch recess, without ruling on the matter.

After the lunch recess, the prosecutor informed the trial court that Nguyen and Barry wanted to change their pleas, and the plea hearing commenced. After waiving his constitutional rights, Nguyen pleaded guilty to second degree murder (count 1) and attempted murder (count 2), and he admitted that in the commission of the murder and attempted murder a principal used a firearm within the meaning of section 12022. Nguyen's counsel stipulated "that the factual basis [for the guilty pleas] is based upon the preliminary hearing and the police reports." The trial court sentenced Nguyen to state prison for 18 years, eight months to life: for the murder, 15 years to life, plus a consecutive term of one year for the firearm enhancement; and for the attempted murder, two years, four months (one-third the middle term), plus a consecutive term of four months for the firearm enhancement.[7]

---

[7] Barry pleaded guilty to premeditated and deliberate first degree murder (count 1) and attempted murder (count 2), and he admitted that in the commission of the murder and attempted murder he personally and intentionally discharged a firearm within the meaning of 12022.53, subdivision (c). The trial court sentenced Barry to state prison for 45 years to life: 25 years to life for the murder, plus a consecutive term of 20 years for the firearm enhancement.

8

### III. Petition for Resentencing Under Section 1170.95

On February 4, 2019, Nguyen, representing himself, filed a form petition for resentencing under section 1170.95, checking a box stating that he pleaded guilty to second degree murder in lieu of going to trial because he believed he could have been convicted of second degree murder at trial pursuant to the felony murder rule or the natural and probable consequences doctrine. He also checked a box, requesting the trial court appoint counsel to represent him. On February 11, 2019, after reviewing the petition, the trial court referred the matter for appointment of counsel for Nguyen.

The People filed a response to the petition, asserting Nguyen cannot make a prima facie showing he is entitled to relief under section 1170.95 because (1) he was not convicted under a felony murder or natural and probable consequences theory of liability, and (2) the record of conviction demonstrates Nguyen acted with malice aforethought as an aider and abettor. In support of this assertion, the People argued: "Sufficient evidence presented at the preliminary hearing demonstrated that Nguyen was an aider and abettor to the murder of Kim and the attempted murder of Roe. At no point did the People argue that the natural and probable consequences applied to this case, and there is nothing in the record to support that the court considered that theory in holding Defendant Nguyen to answer." The People explained that the "underlying theory for the killing was that it was a murder for hire," with Nguyen agreeing to pay Barry for committing the murder.

Nguyen's appointed counsel filed a reply to the People's response to the petition, asserting Nguyen is entitled to relief under section 1170.95 because the preliminary hearing testimony

fails to establish the plan between Nguyen and Barry was the murder of Kim, and there is insufficient evidence Nguyen acted with express or implied malice. As stated in the reply, Nguyen argued: "[T]he actual testimony as seen in the preliminary hearing transcript reveals only that *something* was planned by defendants Nguyen and Barry to address with victim Kim the perceived problem with a sale of drugs by Kim to Nguyen. If the evidence failed to establish that murder was the plan all along, then malice cannot be imputed to Nguyen as an aider and abettor to murder, and his petition for resentencing must be granted." Nguyen further asserted in the reply that the "factual record more readily supports a second degree felony murder or natural and probable consequences theory, but those have both been eliminated by statute" after the enactment of Senate Bill No. 1437. In support of this assertion, Nguyen argued: "Previously, a fact pattern like Nguyen's could also possibly be prosecuted on a second degree felony murder theory, the underlying felony being witness intimidation, for example. That is a guess, since the record is devoid of any description of the contemplated act. The People could also have pursued a natural and probable consequences theory, the target crime being battery, or intimidation, or even brandishing a weapon as a scare tactic."

The People filed a sur-reply to Nguyen's reply, attaching the police reports setting forth the witness statements the prosecution sought to introduce at trial (through witness testimony) prior to the guilty pleas, as described above. The People argued "the underlying police reports provide additional evidence to support the People's position that Defendant Nguyen directly aided and abetted the murder of Victim Kim." In response, Nguyen's appointed counsel filed a motion to exclude

10

the police reports and witness statements from the proceedings on the petition on the grounds they "are not part of the record of conviction, they are inadmissible hearsay, and they are not subject to mandatory or discretionary judicial notice."[8]

On May 14, 2019, the trial court held a hearing on Nguyen's petition for resentencing. Nguyen's appointed counsel argued Nguyen is eligible for relief under section 1170.95 because the preliminary hearing transcript does not establish Nguyen "knew he was going to be aiding and abetting a murder," and therefore "the only other theory on which he could have been prosecuted is a natural and probable consequences theory which has been expressly limited by the bill [Senate Bill No. 1437] and the statute [section 188]." The prosecutor argued Nguyen did not make the requisite prima facie showing under section 1170.95 because the preliminary hearing transcript shows that Nguyen was a direct aider and abettor, and therefore "a valid theory of murder still applies" to Nguyen's conviction. The trial court denied Nguyen's petition from the bench. In response to a question by Nguyen's counsel, the court indicated it did not consider the police reports in denying the petition.

Also, on May 14, 2019, the trial court issued a minute order setting forth its reasons for "summarily" denying Nguyen's petition for resentencing without issuing an order to show cause or holding an evidentiary hearing. Although the parties did not raise the issue, the court concluded Senate Bill No. 1437, which added section 1170.95 and amended sections 188 and 189,

---

[8] In the motion, Nguyen listed the reporter's transcripts from the preliminary and plea hearings as part of the record of conviction that the court may consider in determining eligibility for relief under section 1170.95.

11

violates the California Constitution because it (1) "purports to vacate final judgments in criminal cases"; (2) "violates the separation of powers doctrine"; and (3) "impermissibly amended two California initiatives, Proposition 7 and Proposition 115."[9] The court also concluded Nguyen is not entitled to relief under section 1170.95 as a matter of law because the preliminary hearing transcript demonstrates Nguyen aided and abetted the charged offenses, and the prosecution did not argue a natural and probable consequences theory of liability.[10]

## DISCUSSION

Nguyen contends he made a prima facie showing that he is entitled to relief under section 1170.95 based on the form petition, the transcripts from the preliminary and plea hearings, and the briefing his appointed counsel filed, and therefore the trial court erred in summarily denying his petition for

[9] Nguyen argues, and the Attorney General agrees, Senate Bill No. 1437 is constitutional. We need not address the issue because we affirm the order denying the petition for resentencing on other grounds, as set forth below. We note that appellate courts have rejected challenges to the constitutionality of Senate Bill No. 1437 on the grounds the trial court cited in its order (as set forth above). (See, e.g., *People v. Lamoureaux* (2019) 42 Cal.App.5th 241; *People v. Johns* (2020) 50 Cal.App.5th 46.)

[10] The trial court also concluded Nguyen is not entitled to relief under section 1170.95 as a matter of law because he "was a major participant in the crime and acted with reckless indifference," citing section 189, subdivision (e)(3). It is not clear what "crime" the trial court is referring to here, as section 189, subdivision (e)(3) relates to the underlying felony in a felony murder, a theory of liability the prosecution did not advance. No underlying felony was charged or posited by the parties prior to the guilty pleas.

12

resentencing without issuing an order to show cause and holding an evidentiary hearing.  We disagree with his contention.

## I.  Senate Bill No. 1437 Added Section 1170.95 and Amended Sections 188 and 189

Under section 1170.95, subdivision (a), "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1)  A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2)  The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.  [¶]  (3)  The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."

In amending section 188, Senate Bill No. 1437 added the following provision:  "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.)  To prove liability for murder as a direct aider and abettor—a theory that is still viable after Senate Bill No. 1437's amendment of section 188—the prosecution must show the defendant acted with knowledge of the perpetrator's criminal purpose and with the

13

intent of committing, encouraging, or facilitating commission of the offense. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117-1118.)

Senate Bill No. 1437 also added subdivision (e) to section 189 [the statute that codified the felony murder rule], providing: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a)[11] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); Stats. 2018, ch. 1015, § 3.)

A trial court that receives a petition for resentencing under section 1170.95 must follow these steps, in pertinent part: "The court shall review the petition and determine if the petitioner has

---

[11] Subdivision (a) of section 189 provides: "All murder that is perpetrated by means of a destructive device or explosive, a weapon of mass destruction, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or that is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 287, 288, or 289, or former Section 288a, or murder that is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree."

14

made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)[12]  Here, the trial court appointed counsel for Nguyen, and the People and Nguyen's appointed counsel filed and served briefing in connection with Nguyen's petition.  Therefore, the question on appeal concerns the last sentence of section 1170.95, subdivision (c)—whether Nguyen made a prima facie showing that he is entitled to relief.

"The nature and scope of section 1170.95, subdivision (c)'s second prima facie review, made following a round of briefing by the prosecutor and counsel for petitioner, is equivalent to the familiar decisionmaking process before issuance of an order to show cause in habeas corpus proceedings, which typically follows an informal response to the habeas corpus petition by the Attorney General and a reply to the informal response by the petitioner.  (See Cal. Rules of Court, rule 4.551(b).)  Indeed, the standard for subdivision (c)'s second review—'a prima facie

---

[12] We do not set forth in this opinion the statutory requirements regarding the filing, service, and contents of a petition for resentencing set forth in subdivision (b) of section 1170.95 because the trial court did not deny the petition based on a failure to comply with this subdivision, and the People do not argue Nguyen failed to comply with these requirements.

15

showing that he or she is entitled to relief'—is identical to the standard for issuance of an order to show cause in a habeas proceeding, as set forth in rule 4.551(c)(1):  'The court must issue an order to show cause if the petitioner has made a prima facie showing that he or she is entitled to relief.  In doing so, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause.' " (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, review granted Mar. 18, 2020, S260493.)

In determining whether a petitioner has made a prima facie showing that he or she is entitled to relief, the "trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing. Just as in habeas corpus, if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.]  However, this authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd. (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion . . . ." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.)

If a petitioner makes a prima facie showing that he or she is entitled to relief, and the trial court issues an order to show

16

cause, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

## II. Nguyen Did Not Make a Prima Facie Showing That He Is Entitled to Relief

Based on the transcripts from the preliminary and plea hearings—which Nguyen and the Attorney General agree courts may consider in determining whether a petitioner made a prima facie showing he or she is entitled to relief—we conclude Nguyen is not entitled to relief as a matter of law, and the trial court did not err in denying the petition without issuing an order to show cause and holding an evidentiary hearing.

A petition for resentencing under section 1170.95 is only available to a person convicted of felony murder or murder under a natural and probable consequences theory. (§ 1170.95, subd. (a).) The transcripts from the preliminary and plea hearings demonstrate Nguyen was convicted of second degree murder as a direct aider and abettor. This was the only theory put forth by the prosecutor, not only at the June 15, 2006 preliminary hearing, but also on October 25, 2006, the date trial was set to commence, when the prosecutor sought to introduce at trial statements that both Nguyen and Barry told others that Nguyen instructed Barry to kill Kim, and Nguyen paid Barry for doing so.

17

If Nguyen had gone to trial, and the parties had presented no argument and the trial court had given no instructions regarding felony murder or murder under a natural and probable consequences theory, there is no question Nguyen would be unable to make a prima facie showing that he is entitled to relief under section 1170.95. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1138, review granted Mar. 18, 2020, S260598 [" 'For example, if the petition contains sufficient summary allegations that would entitle the petitioner to relief, but a review of the court file shows the petitioner was convicted of murder without instruction or argument based on the felony murder rule or [the natural and probable consequences doctrine], . . . it would be entirely appropriate to summarily deny the petition based on petitioner's failure to establish even a prima facie basis of eligibility for resentencing' "].)  Nguyen's murder conviction after a guilty plea should not be accorded less weight and finality than a murder conviction after a jury trial, as the transcripts from the preliminary and plea hearings demonstrate Nguyen was convicted of second degree murder as a direct aider and abettor.

There is no mention in the record, prior to the guilty pleas, of any underlying felony that could be used as the basis of felony murder liability, or any target offense that could be used as the basis of liability under the natural and probable consequences doctrine.  This is not a case, for example, where the petitioner pleaded guilty to a felony murder based on a robbery, and an evidentiary hearing under section 1170.95, subdivision (d) was necessary to determine whether the petitioner could be convicted of felony murder in light of the changes to section 189, subdivision (e)(3), as a major participant in the underlying felony who acted with reckless indifference to human life.  (See *People v.*

18

*Drayton, supra*, 47 Cal.App.5th at pp. 969-970, 981-983.) At no time prior to the guilty pleas did Nguyen's counsel posit that Nguyen could be found guilty of some less serious crime than murder and attempted murder. And it would be speculative for his counsel or this court to suggest such a crime at this stage.

Nguyen's briefing indicates he is using this petition as a vehicle for collaterally attacking the judgment, more than a decade after it was final, by challenging the sufficiency of the evidence that he aided and abetted the murder. In his opening appellate brief, he included no discussion of how he could have been convicted of felony murder or murder under a natural and probable consequences doctrine. He merely stated that the evidence presented at the preliminary hearing does not "preclude[] the prospect that he pleaded guilty because he believed he could have been convicted under a felony murder or natural and probable consequences theory that no longer remains viable after the enactment of S.B. 1437." He identified no underlying felony or target offense which would have made either of these theories viable in 2006, and not today. Relief under section 1170.95 is only available when certain conditions enumerated in the statute apply, including that the "petitioner could not be convicted of first degree or second degree murder *because of changes to Section 188 or 189 made effective January 1, 2019*." (§ 1170.95, subd. (a)(3), emphasis added.) While Nguyen argues he could not be convicted of murder because there was insufficient evidence presented at the preliminary hearing that he aided and abetted the murder, his arguments in his opening brief do not relate to the changes to section 188 or 189 enacted under Senate Bill No. 1437.

19

In his reply appellate brief, Nguyen directed us to an excerpt from the reply brief filed by his appointed counsel below, which we set forth above and quote again here: "Previously, a fact pattern like Nguyen's could also possibly be prosecuted on a second degree felony murder theory, the underlying felony being witness intimidation, for example. That is a guess, since the record is devoid of any description of the contemplated act. The People could also have pursued a natural and probable consequences theory, the target crime being battery, or intimidation, or even brandishing a weapon as a scare tactic." He further asserted in his reply appellate brief that one of the ways the prosecutor argued at the preliminary hearing that he aided and abetted the murder—coordinating with the victim to establish the meeting location—"could have exposed him to criminal liability" under a natural and probable consequences theory.

Nguyen's counsel's conjecture and speculation about other theories that could have been pursued at trial do not alter our conclusion, based on the transcripts from the preliminary and plea hearings, that Nguyen was convicted of second degree murder as a direct aider and abettor. The record of the conviction demonstrates that he pleaded guilty under this theory. His challenge to the sufficiency of the evidence that he aided and abetted the murder does not establish a prima facie showing that he could not be convicted of second degree murder *based on changes to section 188 or 189*, as required under section 1170.95. He is not entitled to relief as a matter of law, and the trial court did not err in denying his petition without issuing an order to show cause and holding an evidentiary hearing.

## DISPOSITION

The order denying Nguyen's petition for resentencing is affirmed.

CERTIFIED FOR PUBLICATION


CHANEY, J.


We concur:



BENDIX, Acting P. J.



SINANIAN, J.*

---

* Judge of the Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.