Filed 12/8/20  P. v. Pulido CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDMUNDO PULIDO,<br><br>    Defendant and Appellant. | H047751<br>(Monterey County<br>Super. Ct. No. SS130724) |

## I.    INTRODUCTION

In 2014, defendant pleaded guilty to two counts of second degree murder (Pen. Code, § 187, subd. (a); counts 1-2)[1] arising from separate incidents.  Defendant also admitted the allegations that a principal was armed with a firearm during the commission of count 1 (§ 12022, subd. (a)), he personally used a firearm during the commission of count 2 (§ 12022.5, subd. (a)), and he committed both offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1), (5)).  Pursuant to a negotiated disposition, defendant was sentenced to an aggregate term of 35 years to life.

In 2019, defendant filed a petition for resentencing pursuant to section 1170.95, which allows individuals convicted of felony murder or murder under the natural and probable consequences doctrine to petition the superior court to vacate the conviction

---

[1]  All further statutory references are to the Penal Code.

under recent changes to the law. After briefing by the parties, the superior court denied the petition, finding that defendant failed to make a prima facie showing of entitlement to relief.

Defendant contends the superior court erred when it summarily denied his petition as it pertained to count 1 because he stated a prima facie case of entitlement to relief. Defendant asserts that the court should have issued an order to show cause regarding count 1 and held a hearing pursuant to section 1170.95, subdivision (d). The Attorney General agrees.

For reasons that we will explain, we conclude that defendant stated a prima facie case of entitlement to relief on count 1. We will therefore reverse the superior court's order denying defendant's section 1170.95 petition for failure to make a prima face case for relief and remand the matter for the issuance of an order to show cause and an evidentiary hearing on count 1.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Factual Background*[2]

At approximately 6:00 p.m. on March 23, 2010, police were dispatched to a drive-by shooting near Laurel Pocket Park in Salinas. Azahel C., a six-year-old boy, had been shot in the head and killed while inside his home. The wound was consistent with a nine-millimeter bullet.

A witness observed a gold Honda traveling away from the scene after shots rang out. Video surveillance footage from a nearby store showed a person take off running as he "intersected" with the Honda and the Honda accelerated. A person could be seen

---

[2] The facts pertaining to count 1 are taken from the preliminary hearing transcript that provided the factual basis for defendant's plea. We do not summarize the facts pertaining to count 2 because the preliminary hearing transcript that provided the factual basis for defendant's plea to count 2 is not part of the record on appeal, presumably because it was not attached as an exhibit to the parties' briefing below.

2

hanging out of the Honda's window and looking back toward the park. Four nine-millimeter shell casings were found at the scene.

A former Norteño criminal street gang member identified as "CI2" testified that when he was at a cousin's house the day after the incident, Bernardo Camacho, also known as "Nightmare," asked whether people had heard about the shooting. Camacho then said, "It was me," and that he "fucked up" and was "the one that shot." CI2 testified that Camacho stated that he and "Eddie Boy" saw a group of Sureños as they were driving by the park. Camacho "told 'em to drive back around the block and if it was clear he was going to shoot at them." They drove back around and Camacho started shooting.

CI2 testified that he "could tell by [Camacho's] demeanor that he wasn't lying." CI2 stated, "That's not something you want to take blame for" based on "[t]he victim and . . . the way the shooting happened," explaining that "a drive-by-shooting . . . you can't really do as a Norteño." CI2 told Camacho that he could either turn himself in or go to Mexico. The next time CI2 saw Camacho was in Mexico.

A person identified as "CI1" told a district attorney investigator that when he saw a news story about the shooting, he thought "it looked like [defendant's] vehicle." Defendant was CI1's cousin. CI1 told the investigator that at some point when CI1 and defendant were housed together in jail, defendant stated that Camacho was the shooter and he was the driver. After the shooting, defendant went to San Luis Obispo and San Diego to hide. He sold the Honda in Mexico.

During a recorded jail conversation between CI1 and defendant, defendant stated that he and Camacho went to "Tito B[.]'s pad," Camacho gave Tito B. "the strap," and Tito B. got rid of it. "Strap" is a common term for gun. Defendant also said that the car was "gone."

The lead detective in the case interviewed a group of minors associated with a Sureño criminal street gang. One of the minors told the detective that he believed he was

3

the target of the shooting. The detective observed Sureño gang graffiti in the park. The detective also viewed the surveillance footage from the market. The footage showed an individual start to run as a vehicle drove by. The detective observed what may have been the same vehicle drive by the scene 47 seconds before the shooting.

The detective interviewed a witness in San Luis Obispo identified as "TL1." TL1 told the detective that when defendant visited him in April or May 2010, defendant stated that he was with someone "who did a shooting" and defendant believed someone had been shot. Defendant later learned from a news story that a child had been killed. At another point, defendant asked TL1 if he could stay with him in San Luis Obispo because the police were after him.

The parties stipulated that the Norteños are a criminal street gang. A gang expert testified that Norteños are rivals of Sureños. The expert opined that defendant and Camacho were active participants in a Norteño criminal street gang and that the drive-by shooting was gang-related. The expert testified that committing a murder benefits the gang because it creates fear in the community and the rival gang.

### B. *Procedural History*

#### 1. Charges, Pleas, and Sentence

In 2013, defendant was charged by information with two counts of special circumstances murder (§§ 187, subd. (a), 190.2; counts 1-2) and two counts of street terrorism (§ 186.22, subd. (a); counts 3-4). As to count 1, it was alleged that the murder was perpetrated by means of discharging a firearm from a motor vehicle with the intent to inflict death (§ 190.2, subd. (a)(21)) and that defendant intentionally killed the victim while an active participant in a criminal street gang to further the activities of the gang (§ 190.2, subd. (a)(22)). As to count 2, it was alleged that defendant was convicted of multiple murders (§ 190.2, subd. (a)(3)) and that defendant intentionally killed the victim while an active participant in a criminal street gang to further the activities of the gang. It

4

was also alleged that defendant committed counts 1 and 2 for the benefit of a criminal street gang (§ 186.22, subd. (b)(1), (5).)

At the 2014 plea hearing, the prosecution amended the information to strike the premeditation language from counts 1 and 2 and allege that a principal was armed with a firearm during the commission of count 1 (§ 12022, subd. (a)) and defendant personally used a firearm in the commission of count 2 (§ 12022.5, subd. (a)). Defendant pleaded guilty to two counts of second degree murder as amended. Defendant admitted the firearm allegations and that he committed the offenses for the benefit of a criminal street gang. In his written waiver of rights, defendant stated that the preliminary hearings provided the factual basis for his pleas.[3] Regarding count 1, defendant stated in his waiver of rights, "[T]he factual basis is contained in the preliminary hearing transcript, . . . which describes the death of Azahel [C.] by which I did aid and abet by driving a car from which the fatal shot was fired." Regarding count 2, defendant stated that the preliminary hearing transcript "describes the death of Efrain Vargas in a gang shooting which I did commit and personally fired the firearm."

Pursuant to a negotiated disposition, defendant was sentenced to an aggregate term of 35 years to life.

### 2.     Section 1170.95 Proceedings

In August 2019, defendant filed a petition for resentencing pursuant to section 1170.95. The petition consisted of a three-page preprinted form. Defendant checked boxes on the form indicating that "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; he "pled guilty . . . to 1st or 2nd degree murder in lieu of going to trial because [he] believed [he] could have been convicted of 1st or 2nd degree murder at trial pursuant to the felony

---

[3] Counts 1 and 2 were initially charged separately.

5

murder rule or the natural and probable consequences doctrine"; and he "could not now be convicted of 1st or 2nd degree murder because of changes made to . . . § § 188 and 189, effective January 1, 2019." In addition, defendant checked boxes stating that he "was not the actual killer"; he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; and he "was not a major participant in the felony or . . . did not act with reckless indifference to human life during the course of the crime or felony." Defendant also requested counsel.

The superior court appointed counsel to represent defendant. In written opposition to the petition, the prosecution declined to address the petition as it pertained to count 2 because defendant "stipulated he was the shooter, and admitted the personal use of a firearm." Regarding count 1, the prosecution asserted that defendant was not entitled to relief because he was prosecuted as an aider and abettor and was not convicted of felony murder or murder under the natural and probable consequences doctrine. Alternatively, the prosecution argued that defendant was a major participant in the murder who acted with reckless indifference to human life. In addition, the prosecution contended that Senate Bill No. 1437, by which section 1170.95 was enacted, was unconstitutional.

Defendant replied to the prosecution's briefing, arguing that through his plea to count 1, he "agreed . . . that his act of a[i]ding and abetting was: he drove a car and someone shot out of the car. This is a natural and probable consequences murder." Defendant argued that count 1 "[was] not a felony murder case" because under the merger doctrine articulated in *People v. Chun* (2009) 45 Cal.4th 1172, 1200 (*Chun*), "when the underlying felony is assaultive in nature, such as a violation of section 246 or 246.3, the felony merges with the homicide and cannot be the basis of a felony murder instruction. In relation to [c]ount 1, the discharge of the firearm is an assault and the assault merges with the homicide and cannot be the basis for a felony murder." Defendant also asserted that the preliminary hearing evidence demonstrated that he

6

shared Camacho's intent "simply to scare rival gang members," not to kill them, based on Camacho's statements to CI2 that Camacho " 'told 'em to drive back around the block and if it was clear he was going to shoot at them' " and that he " 'fucked up,' " and CI2's testimony that drive-by shootings were unacceptable to Norteños. Regarding count 2, defendant argued that his plea did not establish that he was the actual killer or "had the specific intent to kill as now required of an aider and abettor to a homicide." Defendant also contended that Senate Bill No. 1437 was constitutional.

The superior court denied the petition for failure to state a prima facie case for relief. The court stated that it had reviewed the petition, briefing, exhibits, preliminary hearing transcripts, the plea waiver form, and the parties' stipulations, and had conducted its own review of readily available information in the court's file.

The court addressed count 2 first, determining that "[t]he facts in this case are sufficient to establish that [defendant] was the actual killer of . . . the victim identified as Efrain Vargas." The court summarized the facts in the preliminary hearing transcript and found that "[b]eyond that, [defendant] stipulated that he was the shooter and admitted the personal use of a firearm."

Regarding count 1, the court determined that defendant could still be convicted of murder following the change in the law because the evidence established that defendant "with the intent to kill aided, abetted, counseled or commanded or induced or solicited or requested or assisted the actual killer, [who] was identified as a gang member with the moniker Nightmare." The court found that defendant was prosecuted as an aider and abettor, which he admitted in his waiver of rights form, and that he was not convicted of felony murder or murder under the natural and probable consequences doctrine. The court determined that the "evidence . . . supports the People's contention that [defendant] was fully aware of what his codefendant intended to do and . . . shared in his codefendant's intent to kill rival gang members." The court continued, "[Defendant] knew the area where the shooting occurred was frequented by rival S[u]reños gang

7

members.  [¶]  . . . [Defendant] drove around the block at least twice, as was observed on the video surveillance footage.  [Defendant] took the gun that was used to kill Azahel C[.] to a fellow gang member's home after the shooting, and later he either sold or got rid of the car which was used to hunt down a rival gang member and used to carry out the drive-by shooting that resulted in Azahel C[.]'s early demise.  [¶]  [Defendant's] intent may also be gleaned from the existence of a gang rivalry that was testified to by the expert with respect to criminal street gangs."  The court alternatively found that "[t]he evidence . . . also establishes that the defendant was a major participant" in Azahel C.'s murder who "acted in reckless indifference [to] human life."[4]

### III.    DISCUSSION

Defendant contends the superior court erred when it determined he failed to state a prima facie case for section 1170.95 relief on count 1.[5]  Defendant argues that the court erroneously determined that he was not prosecuted under the felony murder rule or the natural and probable consequences doctrine and found that "[t]he evidence in this case supports the People's contention that [defendant] was fully aware of what his co-defendant intended to do and . . . shared in his co-defendant's intent to kill rival gang members."  The Attorney General concedes that defendant made a prima facie case for relief on count 1 and that an order to show cause should have issued.

#### A.    *Statutory Framework*

The Legislature enacted Senate Bill No. 1437 to "amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant of the underlying felony who acted with reckless indifference

---

[4]  The superior court did not address the prosecution's argument that Senate Bill No. 1437 was unconstitutional.

[5]  Defendant does not challenge the superior court's ruling that he failed to state a prima facie case for relief on count 2.

to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The bill amended sections 188 and 189, which pertain to the definition of malice and the degrees of murder. (Stats. 2018, ch. 1015, §§ 2-3.)

The Legislature amended section 188 by adding subdivision (a)(3), which provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3).) Section 189, subdivision (e), now limits liability for murder to a person who was either the actual killer or, though not the actual killer, acted "with intent to kill" and "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer" in the commission of first degree murder, or was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).)

In addition to the amendments to sections 188 and 189, Senate Bill No. 1437 added section 1170.95, which allows "[a] person convicted of felony murder or murder under the natural and probable consequences theory" to petition the sentencing court to vacate the murder conviction and be resentenced on any remaining counts. (Stats. 2018, ch. 1015, § 4; § 1170.95, subd. (a).) All of the following conditions must apply to warrant section 1170.95 relief: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[; and] [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)-(3).)

9

Subdivision (c) of section 1170.95 "prescribes a two-step process for the court to determine if an order to show cause should issue: 'The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.' " (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 327 (*Verdugo*), review granted Mar. 18, 2020, S260493.)

"Once the order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) If the prosecutor does not stipulate to vacating the conviction and resentencing the petitioner (§ 1170.95, subd. (d)(2)), the People have the opportunity to present new and additional evidence at the hearing to demonstrate the petitioner is not entitled to resentencing. (§ 1170.95, subd. (d)(3).) The petitioner also has the opportunity to present new or additional evidence in support of the resentencing request. (*Ibid.*)" (*Verdugo*, *supra*, 44 Cal.App.5th at p. 327, review granted Mar. 18, 2020, S260493.) The burden of proof at the hearing is on the prosecution and the prosecution must prove beyond a reasonable doubt that the defendant is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

**B.**     ***Standard of Review***

Whether the superior court properly denied defendant's section 1170.95 petition for failure to state a prima facie case for relief involves multiple standards of review. We review the court's factual findings for substantial evidence and the court's application of those facts to section 1170.95 de novo. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 981 (*Drayton*).)

10

## C.    *Analysis*

In *Drayton*, this court considered how a superior court should "assess whether a petitioner has made a prima facie showing of entitlement to relief under section 1170.95, subdivision (c), such that [the court] must issue an order to show cause." (*Drayton*, *supra*, 47 Cal.App.5th at p. 968.) This court held that the superior court "should assume all facts stated in the section 1170.95 petition are true" and that the court "should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law." (*Id.* at p. 980; but see *People v. Garcia* (2020) 100 Cal.App.5th 100, 106 [holding that "where . . . the record of conviction contains substantial evidence based on which a reasonable trier of fact could find the petitioner guilty of murder beyond a reasonable doubt under current law . . . , the petitioner has failed to carry his burden of making a prima facie showing that he could not presently be convicted of murder" and "[t]he petition must be denied even though the assertions in the petition, if true, would satisfy the statutory criteria for relief"].) This court further held that the superior court's authority to make credibility determinations at the prima facie stage "is limited to readily ascertainable facts from the record . . . , rather than factfinding involving the weighing of evidence or the exercise of discretion." (*Drayton*, *supra*, at p. 980.) As the Attorney General concedes, *Drayton* is dispositive here.

The district attorney in *Drayton* contested the defendant's allegation that he was not a major participant in the underlying robbery who acted with reckless indifference to human life. (*Drayton*, *supra*, 47 Cal.App.5th at p. 981.) The district attorney relied on preliminary hearing testimony to argue that the defendant went to the victims' home, participated in the robbery, and pointed a gun at one of the victims, rendering the defendant a major participant. (*Id.* at pp. 970, 981.) The district attorney asserted that the defendant's reckless indifference to human life was established by the fact that he brought his gun to the crime scene and did not assist the murder victim after he had been shot. (*Id.* at p. 970.)

11

The defendant in *Drayton*, on the other hand, contended that he had stated a prima facie case that he did not act with reckless indifference to human life because he never fired his gun and he tried to stop the robbery but was afraid because a coperpetrator pointed a gun at him. (*Drayton*, *supra*, 47 Cal.App.5th at p. 971.) The defendant asserted that he had armed himself for his own protection based on a prior incident, not to perpetrate the robbery; he did not injure the victim he pointed his gun at and prevented her from being killed; and he prevented another victim from being raped. (*Ibid.*) The defendant also argued that he was unaware of his coperpetrator's propensity for violence and emphasized that he had turned himself into the police. (*Ibid.*)

The superior court summarily denied the defendant's petition. (*Drayton*, *supra*, 47 Cal.App.5th at p. 971.) The court made extensive factual findings based on the preliminary hearing testimony and ruled that the defendant was a major participant in the underlying felonies who acted with reckless indifference to human life, which the court stated was "blatantly apparent by his conduct, being armed and his participation in this event, as well as the conduct of his co-conspirators, the other individuals." (*Id.* at p. 981.)

This court reversed, concluding that "[a]t this stage of the petition review process, governed by section 1170.95[,] [subdivision] (c), the trial court should not have engaged in this factfinding without first issuing an order to show cause and allowing the parties to present evidence at a hearing, as described in section 1170.95, subdivision (d)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 982, fn. omitted.)

The California Supreme Court is currently considering whether "superior courts [may] consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under . . . section 1170.95." (*People v. Lewis* (2020) 43 Cal.App.5th 1128 (*Lewis*), review granted Mar. 18, 2020, S260598.)[6] Superior

---

[6] The California Supreme Court is also considering in *Lewis* "[w]hen . . . the right to appointed counsel arise[s] under . . . section 1170.95, subdivision (c)." (*Lewis*, *supra*, 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.)

courts are grappling with what record materials may be considered when determining whether the defendant has made a prima facie case for relief and the California Supreme Court will provide guidance on the issue in *Lewis*.

Here, the superior court first determined that defendant was ineligible for section 1170.95 relief on count 1 because he was prosecuted as an aider and abettor, which he admitted in his written waiver of rights, and was not convicted of felony murder or murder under the natural and probable consequences doctrine. As detailed above, defendant stated in his waiver of rights that the factual basis for his plea to second degree murder as alleged in count 1 was provided by the preliminary hearing transcript, "which describes the death of Azahel C[.] by which [defendant] did aid and abet by driving a car from which the fatal shot was fired." Defendant alleged in his section 1170.95 petition that he was prosecuted under a felony-murder theory or under the natural and probable consequences doctrine and that he did not aid and abet with the intent to kill. In addition, defendant asserted in his section 1170.95 briefing that he was convicted of "a natural and probable consequences murder."

Contrary to the superior court's finding that defendant was ineligible for section 1170.95 relief because he was not convicted of felony murder or murder under the natural and probable consequences doctrine, defendant's admission in his waiver of rights that he aided and abetted in Azahel C.'s death by driving the car from which the fatal shot was fired did not refute the petition's allegation that defendant was convicted of murder under the natural and probable consequences doctrine. Rather, defendant's waiver of rights admission was ambiguous because it did not include a statement of defendant's intent. Direct aiders and abettors "know and share the murderous intent of the actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118.) On the other hand, under the law in effect at the time of the offense, "if a person aid[ed] and abet[ted] only an intended assault, but a murder result[ed], that person may [have] be[en] guilty of that murder, even if unintended, if it [was] a natural and probable consequence of the

13

intended assault." (*Id.* at p. 1117.) Defendant's waiver of rights admission did not shed light on defendant's intent one way or the other. Thus, the trial court erred when, rather than accepting the petition's allegations as true, it found that defendant's waiver of rights admission established defendant was ineligible for relief because he was not convicted of felony murder or murder under the natural and probable consequences doctrine. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 968 ["the trial court should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law"].)

Based on the allegations in the petition and the state of the record, we further conclude the superior court erred when it determined that defendant failed to make a prima facie showing of entitlement to relief on count 1.

Defendant alleged in the petition that he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer." In addition, defendant asserted in his briefing that he did not harbor an intent to kill but rather shared Camacho's intent solely to scare rival gang members by shooting at them. Defendant argued that the record demonstrated "the[] intent was simply to scare rival gang members," not to shoot or kill them, based on CI2's preliminary hearing testimony that Camacho stated he " 'told 'em to drive back around the block and if it was clear he was going to shoot *at* them' "; Camacho stated that he " 'fucked up' "; and drive-by shootings were unacceptable to Norteños. (Italics added.)

Despite the petition's allegations, the superior court determined that the "evidence . . . supports the People's contention that [defendant] was fully aware of what his codefendant intended to do and . . . shared in his codefendant's intent to kill rival gang members." The court found that defendant "knew the area where the shooting occurred was frequented by rival S[u]reños gang members. [¶] . . . [Defendant] drove around the block at least twice, as was observed on the video surveillance footage. [Defendant] took the gun that was used to kill Azahel [C.] to a fellow gang member's

14

home after the shooting, and later he either sold or got rid of the car which was used to hunt down a rival gang member and used to carry out the drive-by shooting that resulted in Azahel C[.]'s early demise. [¶] [Defendant's] intent may also be gleaned from the existence of a gang rivalry that was testified to by the expert with respect to criminal street gangs."

As in *Drayton*, in making these findings the superior court weighed the evidence and made credibility determinations to resolve a disputed issue, namely, whether defendant acted with an intent to kill. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 980.) While it may be possible to infer defendant's intent by weighing the evidence in the record, at the prima facie stage the superior court was obligated to accept the petition's allegations as true unless they were refuted by the record of conviction as a matter of law. (*Ibid.*) Because the allegations were not refuted by the record as a matter of law, the superior court erred when it determined that defendant harbored an intent to kill. (See *id.* at p. 982.)

The superior court's alternate, implicit determination that defendant was ineligible for relief because he could be convicted of felony murder under revised section 189 was also in error. The superior court found that "defendant was a major participant" in Azahel C.'s murder who "acted in reckless indifference [to] human life," which was an implicit determination that defendant could be convicted of felony murder under the changes to section 189. However, as defendant argued below, the felony-murder rule is inapplicable here because the felony underlying the murder is assaultive in nature. When the underlying felony is assaultive in nature, "the felony merges with the homicide and cannot be the basis of a felony-murder [conviction]. An 'assaultive' felony is one that involves a threat of immediate violent injury." (*Chun*, *supra*, 45 Cal.4th at p. 1200, fn. omitted [determining that "shooting at an occupied vehicle under section 246 is assaultive

15

in nature and hence cannot serve as the underlying felony for purposes of the felony-murder rule"].)[7]

As in *Drayton*, the superior court weighed the evidence and made credibility determinations to resolve the disputed issue of whether defendant acted with the intent to kill. (See *Drayton*, *supra*, 47 Cal.App.5th at p. 980.) Because this issue was contested and the record did not establish as a matter of law that defendant acted with the intent to kill, an evidentiary hearing was the proper avenue in which to evaluate the disputed question of defendant's mental state. (See *id.* at pp. 980-982.)

Accordingly, we will reverse the superior court's order determining that defendant failed to establish a prima facie case of entitlement to relief on count 1 under section 1170.95. We will remand the matter for the issuance of an order to show cause and a hearing on defendant's section 1170.95 petition as it pertains to count 1. (See *Drayton*, *supra*, 47 Cal.App.5th at pp. 982-983; § 1170.95, subds. (c), (d).) We express no opinion regarding defendant's entitlement to relief on count 1 following the hearing.

## IV.   DISPOSITION

The superior court's order denying defendant's Penal Code section 1170.95 petition for failure to state a prima facie case is reversed. The matter is remanded to the superior court with directions to issue an order to show cause (Pen. Code, § 1170.95, subd. (c)) and hold a hearing on the petition as it pertains to count 1 (Pen. Code, § 1170.95, subd. (d)).

---

[7] The Attorney General does not address the merger doctrine.

16

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P.J.

_____
DANNER, J.

*People. v. Pulido*
**H047751**