Filed 1/28/25  P. v. Bustamante CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LUIS BUSTAMANTE,<br><br>    Defendant and Appellant. | B331534<br><br>(Los Angeles County Super. Ct. No. BA292725) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mildred Escobedo, Judge.  Reversed and remanded.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Stephanie A. Miyoshi and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

When ruling on defendant and appellant Luis Bustamante's (defendant's) Penal Code section 1172.6 (former section 1170.95) petition challenging his attempted murder conviction,[1] the trial court made remarks conflating the statutory standards relevant to a felony murder conviction with the standard relevant to an attempted murder conviction. The court at one point stated it was looking for "facts that show whether he's an aider and abettor that showed malice. And how are we showing malice? By virtue of using the statute itself and showing that he participated majorly and acted with disregard to human life. That's the malice." We consider whether these and other remarks on the record evince a misapprehension of governing law that requires a remand for redetermination of the issue.

I

A jury convicted defendant in 2006 of attempted willful, deliberate, and premeditated murder and of robbery. The convictions were obtained based on evidence that defendant and a younger accomplice, both members of a criminal street gang, got into a fist fight with a victim at defendant's instigation; left the scene of the fight; re-encountered the victim shortly thereafter; and the younger accomplice (with defendant standing five feet away) then fired multiple gunshots at the victim— striking him in the arm. The trial court sentenced defendant to life in prison (with a 15-year minimum parole term in light of a gang enhancement the jury found true) for the attempted murder conviction.

---

[1]     Undesignated statutory references that follow are to the Penal Code.

2

Many years later, defendant filed his section 1172.6 petition seeking resentencing on the attempted murder conviction. The trial court appointed counsel for defendant and held an order to show cause hearing (§ 1172.6, subd. (d)(3)) in May 2023.

A the hearing, the court initially recognized that "the question becomes, if legally, the natural and probable consequence theory is tossed out, today could [defendant] still proceed on the aiding and abetting aspect, and could [defendant] be found guilty, which is what the jury found."[2] As the hearing progressed, however, the court repeatedly indicated it believed defendant's eligibility for relief turned on whether there was sufficient evidence he was a major participant who acted with reckless indifference to human life—which is a basis for finding a defendant ineligible for section 1172.6 resentencing on a felony murder conviction, not on an attempted murder conviction. (§ 189, subd. (e).) The court observed, for instance, that it would have to determine "the non-killer defendant personally acted with the intent to kill, or—it's a big 'or' in what we're dealing with here—was a major participant who acted with reckless disregard for human life. And that's the key here."[3]

---

[2] The prosecution also represented, during the hearing, that it was advocating denial of defendant's section 1172.6 petition solely on the theory that he directly aided and abetted the attempted murder.

[3] Immediately after this observation, the prosecutor interjected to clarify he was familiar with the major participant terminology being used in the context of a "felony murder analysis" but not in a "natural and probable consequences analysis." Thereafter, however, the court continued to reference

3

Subsequently, the court similarly observed: "[W]e have to show the facts reflect that the malice was there. [¶] How are we going to show that? Because in the conduct, if you will, there has to be something that reflects that, and one of those is major participant, reckless disregard for human life."[4] And again, at greater length, the court reasoned as follows: "[F]elony murder, felony attempted murder, if you will, because that's exactly what's going on here. [¶] And just as it appears what the Legislature is requiring us to do, we are literally bending in all aspects, backwards and forwards and sideways, to try to figure out how this case falls into this new legislation paradigm. [¶] And so I don't intend to use the terms loosely or incorrectly, but the reality in my legal analysis is, and I may be incorrect, but we have to come up with facts that show whether he's an aider and abett[o]r that showed malice. And how are we showing malice? By virtue of using the statute itself and showing that he participated majorly and acted with disregard to human life.

---

major participation and reckless indifference to human life as pertinent to the finding it must make as to defendant's mental state.

[4] In connection with this observation, the trial court stated: "And, therefore, in that instance, those facts . . . demonstrate it's reckless disregard to human life to have this 14, 15, 16-year-old go up with a fully loaded weapon and you take care of business, and do it now. So [the junior accomplice] fires off several rounds, but only hits [the victim] once, thank goodness. [¶] But that's the reckless disregard to human life that this one is demonstrating by teaching this younger junior member." When the court asked the prosecutor whether that analysis made sense, the prosecutor replied it did.

4

That's the malice.  [¶]  So having said that, I'm going to go forward with the analysis that I'm thinking of here."

After these remarks by the court, the prosecution stated it believed the court needed to make a finding that defendant had the same state of mind—express malice, or an intent to kill—as the victim's actual killer.  The trial court did not make such a finding.  Instead, the court ruled that "the entire mental state of knowing, willing and participating in this incident, instructing, directing, if you will, are very clear from the facts" and denied defendant's section 1172.6 petition based on its finding "beyond a reasonable doubt that [defendant] had the required mental state in this incident."

## II

Our factual summary has already foreshadowed the problem in this appeal.  The transcript of the section 1172.6 hearing reveals the trial court did not apply the correct legal standard in evaluating defendant's section 1172.6 petition.  Even positing the trial court correctly understood that a direct aiding and abetting theory of willful, deliberate, and premeditated murder requires proof of express malice, the court's statements reveal a mistaken belief that evidence of major participation and reckless indifference to human life is tantamount to express malice.  That is wrong, and after elaborating, we shall accordingly reverse the trial court's order and remand with directions to redetermine the matter under the correct legal standard.

Until recently, there were "two distinct forms of culpability for aiders and abettors [of an attempted murder].  'First, an aider and abettor with the necessary mental state [wa]s guilty of the

5

intended crime. Second, under the natural and probable consequences doctrine, an aider and abettor [wa]s guilty not only of the intended crime, but also "for any other offense that was a 'natural and probable consequence' of the crime aided and abetted."'" (*People v. Chiu* (2014) 59 Cal.4th 155, 158.) To be found guilty of the first form of aider and abettor liability, often dubbed "direct aiding and abetting," there must be proof that the "aider and abettor's mental state . . . [is] at least that required of the direct perpetrator. 'To prove that a defendant is an accomplice . . . the prosecution must show that the defendant acted "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." [Citation.] When the offense charged is a specific intent crime, the accomplice must "share the specific intent of the perpetrator"; this occurs when the accomplice "knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." [Citation.]' [Citation.] What this means . . . is that the aider and abettor must know and share the murderous intent of the actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118.)

As a result of recent changes to the statutes in this state defining murder, however, a natural and probable consequences doctrine predicate for a murder or attempted murder conviction has been "eliminated . . . in its entirety." (*People v. Curiel* (2023) 15 Cal.5th 433, 462; see also *People v. Coley* (2022) 77 Cal.App.5th 539, 548.) Defendant's trial jury was instructed on a natural and probable consequences theory of attempted willful, deliberate, and premeditated murder (based on the predicate

6

offenses of assault with a firearm or brandishing a firearm), and section 1172.6 therefore permits him to *seek* resentencing. (§ 1172.6, subd. (a) ["A person convicted of . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court that sentenced the petitioner to have the petitioner's . . . attempted murder . . . conviction vacated and to be resentenced . . ."].)

Defendant is only *entitled* to resentencing, however, if he could not presently be convicted of attempted murder because of the elimination of the natural and probable consequences doctrine. (§ 1172.6, subd. (a)(3).) In other words, section 1172.6 relief can be denied if (and only if) defendant could still be convicted of the same attempted murder as a direct aider and abettor. And that requires proof he gave "aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that . . . [he] must intend to kill." (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054; see also *People v. Smith* (2005) 37 Cal.4th 733, 739 ["'The mental state required for attempted murder has long differed from that required for murder itself. Murder does not require the intent to kill. Implied malice—a conscious disregard for life—suffices. [Citation.]' [Citation.] In contrast, '[a]ttempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' [Citations.] Hence, in order for [the] defendant to be convicted of the attempted murder of the baby, the prosecution had to prove he acted with specific intent to kill that victim. [Citation.] Intent to unlawfully kill and express malice are, in essence, 'one and the same'"].)

7

The trial court, at the hearing on defendant's section 1172.6 petition, did not find he intended to kill the attempted murder victim. Instead, the court's comments on the record reveal that the court believed the requisite showing of express malice could be made based on mere proof of reckless disregard for human life or, as the court alternatively put it, an "entire mental state of knowing, willing and participating in this incident, instructing, directing . . . ." That is incorrect and the misapprehension of governing law fatally undermines the reliability of the trial court's ruling.

## DISPOSITION

The trial court's order is reversed and the cause is remanded with directions to hold a new section 1172.6, subdivision (d)(3) hearing at which the court may consider whether defendant could still be convicted of attempted murder as a direct aider and abettor, which would require (among other things) proof defendant had the intent to kill.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM (D.), J.

9